# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

. APRIL TERM, 1907.

---

MORRELL, Appellant, v. LAWRENCE.

Division One, April 11, 1907.

· 1. IMPLIED CONTRACT: Physician: Services Rendered Defendant's Adult Son. A promise to pay for the services is not implied from the fact that a father calls a physician to attend his sick son who is a man of mature age; but when the circumstances are such as to lead the physician to believe, and to charge the father with knowledge that the physician believes, that the father is undertaking to pay for the services to be rendered, the father is liable. And in some cases it is for the jury to draw the inference of an implied contract from the facts.

2. ———: ———: ———: Question for Jury: This Case. The relation of physician and patient had existed between plaintiff and defendant's son for several years, the physician residing in St. Louis, and the son and defendant mostly in New York. For the services prior to 1900 the son paid the physician's bills. In 1900 the son went to Europe and the plaintiff went as his attending physician, he testified upon the request of defendant and his promise to pay for the services, but on his return, defendant refused to pay, a misunderstanding arising between him and plaintiff, and the son settled the matter. In 1902, the son being then forty-two years old, a man of considerable means carrying on a business of his own, living not with his

( 363 )

father but at a hotel in the same city with him, the father tel-egraphed to plaintiff: "Frank is quite sick. We would like to have you come and treat him. Leave on noon train Sunday via Big Four. Answer at once." Plaintiff gave up his busi-ness in St. Louis, and on the next day started for New York, and on arrival there was met by defendant's messenger, taken to defendant's house, and by him to see the son, and treated the son for forty days, until his death. *Held*, that, under the cir-cumstances, the question of whether or not there was an im-plied contract on defendant's part to pay, that is, whether or not the defendant intended plaintiff to understand and the plaintiff did understand that defendant would pay for the ser-vices which the telegram called him to render, was properly submitted to the jury.

3. ——: ——: Value of Services: Wealth of Defendant. The court should not instruct the jury, on the issue of the meas-ure of damages, to take into consideration the fact that de-fendant is a wealthy man. The physician, if entitled to recover at all for services rendered a patient, is entitled to recover the reasonable value of the services' rendered, no more and no less, whether defendant be rich or poor. In such case, the jury have no concern with the question of defendant's ability to satisfy the judgment.

4. ——: ——: ——: ——: When Admissible. If the de-fendant should introduce evidence to show that plaintiff for similar services was accustomed to charge smaller fees than those sued for, the plaintiff should have the right to show in rebuttal, if such were the fact, that the smaller fees were charged to poor men because of their poverty, but that the de-fendant's financial condition justified a charge for fair and rea-sonable compensation. To that extent, and under those condi-tions, the wealth of defendant may be shown.

5. ——: ——: ——: ——: Erroneous Instruction; Cured by Another. In one instruction the jury were told that "in de-termining what is the reasonable value of the services rendered by the plaintiff" as a physician, they should take into consid-eration the ability of the defendant to pay. *Held*, that this er-ror was not cured by another instruction which told the jury that "the evidence touching the financial ability of defendant may be considered by the jury not to enhance the fees above a reasonable compensation, but solely to determine whether de-fendant is able to pay a fair and just and reasonable compen-sation for the services rendered."

6. ——: ——: Evidence: General Reputation. Where plain-tiff sues for professional services rendered by him as a physi-cian to defendant's son in New York, and alleges these ser-

vices to be worth so much,⁻ and makes no claim for a loss from his usual income by reason of his absence from home in the service of defendant, testimony that he was a physician of good reputation in the community of his home, is not competent. It is competent to show that he is a physician of learning and skill, and that fact should be taken as an element in estimating the value of the services rendered, but his general reputation as a physician has no more to do with his case than his general reputation as a man.

7. ———: ———: Instruction: Assuming Verdict for Plaintiff. An instruction should not apparently assume that the jury is going to find for plaintiff and assess the value of the services in question, and be limited to directions to the jury as to what they are to take into consideration in making the assessment. The jury should be given to understand that before they reach the question of the amount of their award, they should determine the main issue of whether or not they will find for plaintiff, such as, "If the jury find for plaintiff, then in determining what is the reasonable value of the services rendered, they will take into consideration," etc.

8. ———: ———: Services Rendered Defendant's Son: Evidence: Financial Ability of Son. Where plaintiff sues defendant for professional services rendered his son, and knew in a general way the financial standing of both father and son, it is error to exclude evidence offered by defendant to show that the son was a man of considerable fortune and amply able to pay for the services rendered. Such evidence bears on the issue of the existence of defendant's implied promise to pay, that is, it would naturally militate against plaintiff's inference that defendant intended to pay for the services.

9. ———: ———: ———⊢—: Excessive Verdict. It is peculiarly within the province of the trial judge to set aside a verdict as being excessive.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan,* Judge.

AFFIRMED.

*Boyle & Priest* and *Edward T. Miller* for appellant.

(1) Instructions 2 and 3 properly declare the law and the court erred in setting aside the verdict on the

ground that they are erroneous. Hurt v. Jones, 105 Mo. App. 111; Ryan v. Hospes, 167 Mo. 361; Ward v. Kohn, 58 Fed. 462; Railroad v. Campbell, 81 Fed. 1003; Morissette v. Wood, 123 Ala. 384; Lange v. Kearney, 4 N. Y. Supp. 14, 127 N. Y. 676; Lombard v. Bayard, 1 Wall. Jr. 196; Succession of Haley, 50 La. Ann. 840; Breaux v. Francke, 30 La. Ann. 336. (2) The verdict is fully supported by the evidence and the court erred in setting it aside as excessive. Wells v. Sanger, 21 Mo. 354; Longan v. Weltmer, 180 Mo. 335; Heimelrich v. Carlos, 24 Mo. App. 264; 1 Graham & Waterman on New Trials (2 Ed.), 451; 14 Enc. Pldg. and Prac., 755.

*Dawson & Garvin* and *Rassieur, Schnurmacher & Rassieur* for respondent.

(1) When a person requests a physician to perform services for another, the law does not raise an implied promise to pay the reasonable value of the services so rendered, unless the relation of the person making the request, to the patient, is such as imposes a legal obligation on him to call in a physician and pay for his services. And where such relationship does not exist there can be no liability to the physician, in the absence of an express promise to pay. Holmes v. Mc-Kim, 109 Iowa 245; Meisenbach v. Southern Cooperage Co., 45 Mo. App. 232; Jesserich v. Walruff, 51 Mo. App. 270; Curry v. Shelby, 90 Ala. 277; Raoul v. Newman, 59 Ga. 408; Smith v. Watson, 14 Vt. 332; Starrett v. Miley, 79 Ill. App. 658; Beach on Modern Law of Contracts, sec. 652; Wood on Master and Servant, secs. 69, 70. (2) And a promise by the parent of an adult or emancipated child will not be implied from the fact that the parent requests a physician to attend such child, even though such child be sick at the parent's house. Rankin v. Beale, 68 Mo. App. 325; Boyd v. Sappington, 4 Watts (Pa.) 247; Crane v. Baudouine,

55 N. Y. 256; Edelman v. McDonnell, 126 Cal. 210; Smith v. Watson, 14 Vt. 332; Madden v. Blaine, 66 Ga. 49; Dorion v. Jacobson, 113 Ill. App. 563. (3) Evidence of the financial condition or ability of defendant to pay, as a basis for determining the reasonable value of plaintiff's services, was improper. The court erred in admitting such evidence, and emphasized its error by instructing the jury that if they found for plaintiff they might, among other elements, consider "the ability of the person liable therefor to pay." Robinson v. Campbell, 47 Iowa 625; Morrissett v. Wood, 123 Ala. 384; Lange v. Kearney, 4 N. Y. Supp. 14, 127 N. Y. 676. (4) Defendant was entitled to show his son's ability to pay for the services rendered him by plaintiff, and that, in point of fact, the expenses of his illness, so far as they were paid in his lifetime, including the hotel and traveling expenses of plaintiff, were paid by the son, or for him by the cashier of his business, and not by defendant. Boyd v. Sappington, 4 Watts (Pa.) 247. (5) The evidence as to plaintiff's standing and reputation in his profession was irrelevant, and should have been excluded. Prietto v. Lewis, 11 Mo. App. 601; Jeffries v. Harris, 10 N. C. 105; Nash v. Gilkenson's Executor, 5 Serg. & R. 352. (6) The verdict was grossly excessive. Therefore, the trial court was warranted in declining to order a *remittitur*, and in setting it aside altogether. Chitty v. Railroad, 148 Mo. 64; Norris v. White, 158 Mo. 20; McCloskey v. Pulitzer Pub. Co., 163 Mo. 22; Friedman v. Pulitzer Pub. Co., 102 Mo. App. 683.

*Boyle & Priest* and *Edward T. Miller* for appellant in reply.

(1) The character of the telegram from defendant to plaintiff is such that the lower court would have been authorized in declaring as a matter of law that a promise to pay for plaintiff's services was implied.

In any event, the telegram and the subsequent conduct of plaintiff and defendant furnish complete justification of the court's action in submitting the case to the jury. Smith v. Myers, 19 Mo. 433; Cowell v. Roberts, 79 Mo. 218; Ryan v. Hospes, 167 Mo. 342; Lilliard v. Wilson, 178 Mo. 145; Voerster v. Kunkel, 86 Mo. App. 197; Hentig v. Kernkle, 25 Kan. 559; Railroad v. Winterbotham, 52 Kan. 433; Gerlach v. Turner, 89 Cal. 446; Bradley v. Dodge, 45 How. Prac. 57; Wood, Master and Servant, secs. 67, 76; Beach, Modern Law of Contracts, sec. 650. (2) Respondent contends that the evidence as to plaintiff's professional standing should have been excluded. That the evidence was properly admitted an examination of the following authorities will clearly demonstrate: Millener v. Drigg, 10 N. Y. St. Rep. 237; Lange v. Kearney, 51 Hun 640, 4 N. Y. Supp. 14, affirmed 127 N. Y. 676; Heintz v. Cooper, 47 Pac. (Cal.) 360.

VALLIANT, P. J.—Plaintiff sues on an alleged implied contract of defendant to pay him the reasonable value of his services as a physician rendered to defendant's adult son at defendant's request.

The facts are: The defendant and his son, Frank Lawrence, both former residents of St. Louis, were at the time in question living in New York City, the son, forty-two years of age, was not living with his father but at a hotel; he was a man of considerable means carrying on a business of his own. Plaintiff is a physician residing in St. Louis. While defendant and his son resided in this city the latter became in bad health and came under the care of the plaintiff; the relation of physician and patient had existed between them for several years. Plaintiff's bills for medical services rendered in St. Louis to Frank Lawrence were presented to and paid by him. In 1899 plaintiff in St. Louis received a telegram from defendant then in Vir-

ginia asking him to go to some place in Michigan where his son then was sick, to minister to him as a physician, and plaintiff was on the eve of going when he received another telegram stating that Frank had already started for his home in St. Louis; on his arrival here plaintiff rendered him medical services and he paid the bill. In 1900 Frank Lawrence went to Europe and the plaintiff went with him as his attending physician. The plaintiff testified that he did not go on that journey at the request of Frank Lawrence alone, but on the request also of Dr. Lawrence, the defendant, who promised plaintiff that he would pay him or see him well remunerated for his services, that after their return from Europe he spoke to Dr. Lawrence about paying him and Dr. Lawrence repudiated the contract; all the pay plaintiff received for his services on that trip lasting three months was $1,000, which Frank paid. So much for the business relations between the parties prior to the transaction now in suit.

On May 31, 1902, Dr. Lawrence and his son then living in New York and the plaintiff in St. Louis, the plaintiff received a telegram from defendant in the following words: "Frank is quite sick. We would like to have you come and treat him. Leave on noon train Sunday *via* Big Four. Answer at once." Plaintiff answered June 1: "Will leave on Big Four at noon to-day." He accordingly arrived in New York on the afternoon of June 2, was met at the station by a messenger of Dr. Lawrence, conducted to the latter's residence, and after tea was conducted to the hotel where Frank Lawrence lay very ill. Plaintiff remained in constant attendance on the sick man, ministering to him day and night until he died July 9. The particular character of the services rendered was in evidence and there was testimony on the part of the plaintiff tending to show that the services were worth $300, $400, $500,

and $1,000 a day. The amount of the bill sued for was
$16,000, itemized at $400 a day for forty days. The
evidence on the part of the defendant was that from
$4,000 to $6,000 would be ample pay for the services
rendered. The verdict was for the plaintiff for $12,666.
The court sustained defendant's motion for a new trial
on the ground of error in the instructions, and that the
verdict was excessive; the plaintiff appealed.

I.    Before we reach the points on which the trial
court based its ruling we must consider the point first
presented in the brief for defendant, that is, that the
plaintiff made out no case to go to the jury. The de-
fendant's proposition is that from the facts and cir-
cumstances shown by the plaintiff's evidence the law
implies no promise or obligation on the part of the
defendant to pay for the services rendered. There is
no   express contract on the part of the defendant
shown; if he is liable it is on an implied contract. Ac-
cording to the defendant's estimate of the evidence
there is shown a request by defendant of plaintiff to
render services for the benefit of another and nothing
more. In their brief the learned counsel quote the law
as laid down in Wood on Master and Servant (2 Ed.),
section 70: "The rule is that, in order to render one
liable for services rendered at his request, they must
be rendered for his benefit, or under such circumstan-
ces that the person requested to render them was jus-
tified in understanding that they were for his benefit
or upon his credit. But if the person performing the
services knows they are not for the benefit of the person
making the request, and that he is under no legal obli-
gation to pay therefor, he cannot predicate a claim
against him, unless he expressly promised to pay for
them before the services were rendered."

That is a correct statement of the general rule of
law on that subject, but it is not of invariable applica-
tion. We see no objection to applying it to the case

of one calling a physician to a suffering stranger when there is nothing in the situation to suggest to the physician that the man calling him has any deeper interest in the case than the prompting of common humanity. And we see no objection to applying the rule to the case of a father calling a physician to wait on his son if the son is of age and living to himself and if there is nothing in the conditions to indicate that the father is taking upon himself anything more than the office of messenger for his son. But there is something more than the dictates of common humanity between father and son and the fact of that relationship is to be considered in connection with other circumstances, if there are other circumstances, indicating to the physician that the father calls him on his own account to serve his son.

In an early Pennsylvania case cited in the brief for defendant, Boyd v. Sappington, 4 Watts 247, it was held that no contract to pay for the services was implied from the mere fact that the defendant called a physician to attend his adult son lying ill at defendant's home. The evidence showed that the father had called on the physician and made the request, the physician at first hesitated, the father insisted and the physician complied. The physician knew that the son, although living with his father, was over twenty-one years old, in business for himself and had property to answer the demand. The father, when he was requesting the physician to go, stated to him that it was his son's request that he should come. It was held that out of those facts an implied contract on the part of the father to pay the bill did not arise. The court said: "There is nothing in the special circumstances relied on to take it out of the general principle; and it is very clear, that had the defendant been a stranger, however urgent he may have been, and whatever opinions the physician may have formed of his liability, he would

not have been chargeable without an express agreement to pay; as, for instance, in the case of an innkeeper, or any other individual whose guest may receive the aid of medical advice. A different principle would be very pernicious; as but few would be willing to run the risk of calling in the aid of a physician, where the patient was a stranger, or of doubtful ability to pay.'' That is the strongest case cited in the brief for defendant in support of his theory on this branch of the case. Except for the fact that in that case the sick man was the defendant's son there was nothing to distinguish it from the case of calling a phyisian to the aid of a stranger under his roof. The physician called was within the field of his daily work, there was nothing unusual in the call.

In Crane v. Baudouine, 55 N. Y. 256, the patient was the defendant's daughter, a married woman living with her husband separate from her father's family, and when taken sick had come to her father's home to be under the care of her mother. The father had not requested the physician's attention to his daughter, but received him when he came, conversed with him about the case and knew the extent of the services rendered. The court held that the father was not liable for the physician's bill.

Edelman v. McDonell, 126 Cal. 210, is also referred to. In that case the physicians had undertaken the treatment of the defendant's son at his request, and after they had begun to render their services the father made statements to them that induced them to believe that he intended to pay the bill and they stated that they relied on those statements and gave credit to both father and son and the suit was against both. It did not appear in the evidence what services were rendered after the alleged statements of the father or their value. The court held that the contract was that of the son,

that the alleged statements of the father were not in writing and he was not bound.

In Rankin v. Beale, 68 Mo. App. 325, there was testimony tending to show that a father had requested the physician to attend his son, twenty-three years old, then sick in the father's house, and that after the services had been rendered the father promised to pay for the same; there was testimony on the other side contradicting this. The court instructed the jury to the effect that although the son was over twenty-one years of age, yet if he was sick in his father's house and the father requested the physician to attend him or if the father stated to the physician that he would pay the bill then he was liable. That instruction directed a verdict against the father either on an implied agreement or express contract, the implied agreement resting alone on the father's request to the physician to attend his son, the express undertaking on a promise to pay after the services had been rendered. The court held that the mere request did not imply an agreement to pay and that the promise made after the services had been rendered was *nudum pactum.*

From those decisions the learned counsel citing them draw the conclusion that a promise to pay the bill is not implied from the fact that a father calls a physician to attend his sick son who is a man of mature age, and to that extent we think the conclusion is justified, but we do not go with the counsel to the extent of holding that a father calling a physician to attend his adult son can be rendered liable only on an express contract, because we hold that the circumstances or conditions may be such as to lead the physician to believe, and to charge the father with knowledge that the physician does believe, that the father is undertaking to pay for the services to be rendered. Whilst the calling of a physician to the bedside of a sick man has in the nature of the case its own elements of ex-

ception to the general rule, yet it is not put so far in a class to itself as to exempt it entirely from the category of implied contracts. Whether the facts of a case are such as to present a question of whether or not a contract may be implied is sometimes a question of fact and sometimes one of law; if in the facts relied on, taken as true, there is nothing to justify the inference the court will so decide as a matter of law, but if they are such as that if credited the inference might or might not legitimately be drawn it is a question of fact. We think the evidence for the plaintiff in this case tends to prove a condition of affairs from which the triers of the fact, if they should see fit to draw the inference, might with reason do so that Dr. Lawrence intended the plaintiff to understand and the plaintiff did understand that he would pay for the services which the telegram called the plaintiff to render. This was not a call on the plaintiff for services in the field of his daily work. It called him away from his established field of action, it called him in effect to resign his practice, to dedicate himself for the time being solely to the service of the defendant's son, whatever the consequence might be to his general practice. This is altogether outside of the category of the cases above referred to. The patient was not one of twenty or more for whom the physician might prescribe in a day, he was one for whom the physician must give up all other patients. The call was a very unusual one and it involved unusual financial consequences.

The plaintiff had made a trip to Europe in professional attendance on defendant's son and, according to his testimony, he had undertaken that journey partly at least on the request of defendant, but when they returned defendant denied that he had made the request and refused to recognize the obligation. The testimony on that point was meagre, but it indicates that on the return from the trip to Europe there was a mis-

understanding between plaintiff and defendant as to the liability of the latter for the services rendered on that occasion, the defendant denying that the trip had been taken at his request and the plaintiff did not press the point. The matter ended with plaintiff's receiving from Frank Lawrence a sum of money which he regarded as inadequate. After that came the transaction now under consideration in which there is no room to question at least one fact, that is, that the plaintiff went to New York and entered upon this service at the request of the defendant. The telegram was not couched in form of a message from the sick man, the writer was not in the character of the conveyor of a request from another and did not assume to express merely another's wish or merely make the announcement that there was a sick man there needing attention. He expressed his own desire, uniting his own with that of his son or possibly of some other member of the family, under the first person plural of the pronoun: "Frank is quite sick. We would like to have you come and treat him. Leave on noon train Sunday *via* Big Four. Answer at once."

If the plaintiff's testimony gives the correct version of the controversy or misunderstanding as to the defendant's liability for the services rendered on the trip to Europe, Dr. Lawrence should have known that the plaintiff would understand that telegram as carrying by implication a promise to pay or at least that he was liable to put that construction on it.

The telegram is to be interpreted in the light of the relation of the parties and of their past transactions with each other. Whether in that light the defendant had reason to believe that the plaintiff would understand the telegram to imply an agreement to pay and plaintiff did so understand were questions for the jury under proper instructions, and if the jury should so find the verdict should be for the plaintiff.

II. It was shown in evidence over the objection of the defendant that he was a very wealthy man, and on the measure of damages the court in its instructions authorized the jury to take that fact into account. The instructions covering that point were as follows:

"2. In determining what is the reasonable value of the services rendered by the plaintiff, the jury should take into account the circumstances and conditions under which the services were rendered, the length of time employed, the professional character and standing of plaintiff, the absence of plaintiff from his residence and place of business, the nature of the ailment of the patient, the nature of the services themselves, the danger, if any, of infection or contagion incident thereto, the professional skill and experience required for their proper rendition, the ability of the person liable therefor, to pay, together with all other facts and circumstances shown in evidence, relative to such services; and, having considered all such facts and circumstances, the jury should fix the value of the services at such an amount as under all the evidence they believe to be reasonable and proper."

"3. The jury are instructed that the evidence touching the financial ability of the defendant may be considered by the jury not to enhance the fees above a reasonable compensation, but solely to determine whether the defendant, if they find, under the other instructions, he is liable at all, is able to pay a fair and just and reasonable compensation for the services rendered to his son."

The trial court sustained the defendant's motion for a new trial on the ground partly that those instructions were erroneous. In that ruling the court was correct.

We are referred to some decisions as sustaining the proposition that the fact that a man is amply able to respond to a judgment for the debt sued for is one

to be taken into account in determining the amount to
be awarded against him, but to the extent that those
cases so hold we do not agree with them. Among those
cited are two Missouri cases, Hurt v. Jones, 105 Mo.
App. 106, and Ryans v. Hospes, 167 Mo. 342, but we
do not understand those cases as so holding. Hurt v.
Jones is only authority for saying that evidence show-
ing a custom of trade fixing the value of the services
of a real estate agent negotiating a sale at two and a
half per cent of the value of the property sold was
admissible; the ability of the defendant to pay was not
brought into question.

In Ryans v. Hospes, the plaintiff sued for the rea-
sonable value of his services as a nurse rendered to
defendant's testator in his lifetime, in his last illness.
The defendant himself introduced the evidence of the
value of the estate, and made the fact of the testator's
great wealth the basis of an argument that a presump-
tion of payment must be indulged. There was no in-
struction to the jury to take into account the wealth
of the testator, in assessing the reasonable value of
the services. The amount awarded in the verdict was
within the value testified to by the plaintiff's witnesses,
and there was no evidence for defendant tending to
show that that estimate was excessive. In comment-
ing on the amount of the verdict the court used the
language quoted in the brief of plaintiff's counsel that
"while the verdict would be large for such services
rendered a person of ordinary means, it must be borne
in mind that Dr. Bradford was a man of great wealth;
that he had no family to bear a portion of the burden
of nursing him in his afflicted old age," etc. That
language was not used in deciding any question at issue
in the case, and it seems rather to relate to the nature
of the services, that is, the exclusiveness on the plaintiff
of the burden of nursing. But however that may be,
the question we are now to decide was not in that case.

In a case of this kind, if the plaintiff is entitled to recover at all, he is entitled to recover the reasonable value of the services rendered. He is entitled to a verdict for the reasonable value of his services, although the defendant may be a poor man; he is not entitled to a verdict for more than the reasonable value of his services, although the defendant may be a man of great wealth. The jury, in a case of this kind, have no concern with the question of the defendant's ability to satisfy the judgment.

Ward v. Kohn, 58 Fed. 462, is cited in the brief for plaintiff. There the court commented on the well-known practice in our profession of charging a poor man less for legal services rendered than those services are worth and on the other hand of charging a wealthy client a full, fair and reasonable compensation, and the court said: "The fees the attorney deserves from such a client should not be measured by the inadequate compensation and small fees the gentlemen of the bar usually received from those who are unable to pay at all or to pay a fair compensation, but they should be measured by the fees usually obtained by attorneys for like service from those who are able to pay just compensation for the services rendered." That is to say, in estimating the value of the services the jury should not take for a standard of measurement the fees a lawyer would charge a poor man, in consideration of his poverty, but should estimate the services at their full, fair value. That is sound doctrine as far as it goes, but it does not authorize the plaintiff to show to the jury the defendant's wealth as an element, to be taken into the account in the measurement of the value of the services, unless it is in rebuttal of evidence from the other side attempting to show the custom of a lower standard. If the defendant should introduce evidence to show that the plaintiff for similar services was accustomed to charge smaller fees than those sued for, the plain-

tiff would have a right to show if such was the fact that the smaller fees were charged to poor men because of their poverty, but that the defendant's financial condition justified a charge for fair and reasonable compensation. In the case at bar there was no effort on the part of defendant to prove that the plaintiff or other physicians were in the habit of charging smaller fees for like services, hence there was no occasion for rebuttal evidence to show that smaller fees were charged out of consideration for the poverty of the patients and that defendant's financial condition did not entitle him to that indulgence.

Instruction 3 did not cure the error in this respect of instruction 2; it justified the jury in believing that there was a difference between the reasonable value of services rendered a rich man and those of the same kind rendered a poor man. There is no such difference.

III. Over defendant's objection testimony went in to show that the plaintiff was a physician of good reputation in the community, and instruction numbered 2 authorized the jury, in assessing the value of the services, to take that fact into account. That was error. The plaintiff's general professional reputation was not drawn in question, and the jury had no right to consider it in estimating the value of the services.

The plaintiff's professional reputation in the community would doubtless have some influence on the amount of income derived from his practice, and if that was in dispute and if he was suing for loss of income caused by absence from home in the service of defendant, evidence of that reputation would be admissible. But there was no question of that kind in the case. The plaintiff testified that his income was $6,000 to $10,000 a year, and there was no dispute of that. Besides, he is not suing for compensation for loss of income occasioned by absence from home in the service of defendant. His petition is short and to the point;

in it he says that at the request of the defendant he rendered professional services to defendant's son and that the services rendered were reasonably worth $16,000. It is the value of the services alone that he sues to recover.

It was competent for the plaintiff to show that he was a physician of learning and skill, and that fact should be taken as an element in estimating the value of the services rendered. But the plaintiff's general reputation as a physician had no more to do with the case than his general reputation as a man.

IV. Instruction 2 is faulty also in this: It apparently assumes that the jury is going to find for the plaintiff and assess the value of the services in question and the instruction is limited alone to directions as to what the jury should take into account in making the assessment. The instruction should have given the jury to understand that before they would reach the question of *quantum valebat* they should find for the plaintiff on the main issue, something for example, like this: If the jury find for the plaintiff, then, in determining what is the reasonable value of the services rendered by the plaintiff, the jury should take into account, etc. We do not regard this as a grave error, but since it has been called to our attention we pass judgment on it that it may be corrected at the retrial.

V. The court excluded evidence offered by defendant to show that the defendant's son Frank Lawrence was a man of considerable fortune and amply able to pay for the services. It was error to exclude that testimony. The testimony showed that the plaintiff, the defendant and the defendant's son were well acquainted with each other. Plaintiff knew in a general way the financial standing of the father and the son. If it had been the fact that the son was impecunious and the plaintiff knew it and defend-

ant knew that the plaintiff knew it, would not that fact have naturally influenced the plaintiff in drawing the inference that the defendant intended to pay for the services he called him to perform? And on the other hand if it was known to both parties that the son was himself a man of considerable wealth would that not naturally render the inference less violent? It was a fact by no means conclusive but it was one of the many facts in the case to be taken into account and given such weight as the jury should see fit to give it.

VI. The learned trial court also assigned as a reason for granting the new trial that the verdict was excessive. That is a point peculiarly within the province of the trial judge, it is one that he is better qualified to judge than an appellate court, the law puts that important responsibility upon him and it advances the cause of justice when the trial judge courageously performs that duty. [Friedman v. Publishing Co., 102 Mo. App. 683.] We see nothing calling for a review of the ruling of the trial court on this point.

The order granting a new trial is affirmed.

All concur except *Woodson, J.,* not sitting.