JOHN C. MORFIT, Respondent, v. WALTER D.
THOMPSON and MABEL GREEN THOMPSON,
Appellants.

St. Louis Court of Appeals. Opinion filed March 2, 1926.

1. **PHYSICIANS AND SURGEONS: Action for Services: Evidence: Training and Experience of Surgeon: Admissibility.** In an action by a surgeon against defendants, husband and wife, to recover the value of surgical operations performed upon the children of defendants, evidence of the training and experience of the surgeon both in civil life and in the medical corps of the army, *held* admissible though his qualifications were not in dispute.

2. **APPELLATE PRACTICE: Instructions in the Nature of Demurrers Offered at Close of Plaintiff's Case and Again at Close of Whole Case: Appellate Court Concerned Only With Demurrer Offered at Close of all the Evidence.** Where a defendant offered instructions in the nature of demurrer at the close of plaintiff's case and again at the close of the whole case, since defendant did not stand upon the first demurrer after it was overruled, but put in her own evidence, the appellate court is concerned only with the demurrer offered at the close of all of the evidence.

3. **PHYSICIANS AND SURGEONS: Action Against Parents for Services Performed on Adult Daughter: Implied Contracts: Evidence: Insufficient to Take to Jury Question of Liability of Mother.** In an action by a surgeon against defendants, husband and wife, to recover the value of surgical operations performed upon children of defendants, evidence *held* insufficient to take to the jury the question of liability of the mother for the operation performed on the adult daughter.

4. **EVIDENCE: Judicial Notice: Rule Stated.** Courts take judicial notice only of such facts commonly known to all persons of ordinary intelligence, and, if there is reasonable doubt as to whether sufficient notoriety exists, such doubt must be resolved on the negative.

5. **PHYSICIANS AND SURGEONS: Reasonable Value of Services of Surgeon: Evidence: Jury Question.** In an action by a surgeon for

services where the fair and reasonable value of such services was in the case for determination, the amount was peculiarly a question for the jury upon the evidence adduced.

NIPPER, J., dissents in separate opinion.

---

*Corpus Juris-Cyc.'References; Evidence, 23 C. J., p. 59, n. 22; p. 61, n. 37. Physicians and Surgeons, 30 Cyc., p. 1603, n. 34 New; p. 1604, n. 43 New. Trial, 38 Cyc., p. 1549, n. 45.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. John W. Calhoun,* Judge.

AFFIRMED AS TO WALTER D. THOMPSON.

REVERSED AS TO MABEL GREEN THOMPSON.

*McDonald & Just* and *Frank B. Coleman* for appellants.

(1) In the absence of an express contract, neither parent is liable for medical services rendered an adult child living under the parental roof, even though they called the physician or surgeon, there being no implied promise to pay for medical services by one who calls a physician, unless the person making the request is under legal obligation to provide such services to the patient, and parents are not liable for the support of adult children. Meisenbach v. Cooperage Co., 45 Mo. App. 232; Jesserich v. Walruff, 51 Mo. App. 270; Rankin v. Beale, 68 Mo. App. 325; Morrell v. Lawrence, 203 Mo. 363; Weinsberg v. Cordage Co., 135 Mo. App. 564; Crowell v. Donaho, 168 Mo. App. 305; 30 Cyc. 1597; Spellman v. Mining Co., 55 L. R. A. 640; Boyd v. Sappington, 4 Watts (Pa.) 247; Crane v. Bandouine, 55 N. Y. 256; Mining Co. v. Montana Ore P. Co., 21 Mont. 537; Trent v. Sherlock, 24 Mont. 255; Baker v. Witten (Okla. July 1, 1892); Veitch v. Russell, 3 Ad. & El. 927; Smith v. Watson, 14 Vt. 332; Starrett v. Wiley, 79 Ill. App. 658; Holmes v. McKim, 109 Iowa, 245; Williams v. Bricknell, 37 Miss.

682; Norton v. Rourke, 130 Ga. 600. (2) In a suit by a surgeon for his fees, his general reputation as a surgeon and his experience as a surgeon are immaterial where it is conceded that he possesses the requisite skill to perform the operation, and it is reversible error to admit evidence on that subject. Morrell v. Lawrence, 203 Mo. 363. (3) Evidence of the financial condition or ability of defendant to pay as a basis for determining the reasonable value of plaintiff's services is improper. The financial status of the defendants being utterly immaterial, it was error to admit evidence as to their residence, for this court may take judicial notice of the class of residences "opposite the Blair statue in Forest Park," that being a matter of common knowledge. Morrell v. Lawrence, 203 Mo. 363. (4) Where a surgeon's charges are unreasonable and excessive, the court may take judicial notice of that fact, it being a matter of common knowledge, and judicial knowledge of facts is measured by general knowledge of the same facts. Hackworth v. Railway, 286 Mo. 282; Valley Springs, etc., v. Plagmann, 282 Mo. 1; Yates v. United Rys., 222 S. W. 1035. (5) It being shown by undisputed testimony that Miss Mabel Thompson was past twenty-one years of age on July 28, 1923, it follows that she became eighteen years of age prior to July, 1920, and thereupon became an adult at law, as the statute of 1921 raising the age of majority became effective June 20, 1921. Mo. Sess. Act 1921, pp. 399, 718. (6) Majority is a personal status and when once vested cannot be taken away by statute. Nahorski v. Terminal, 274 S. W. 1025 (Mo. Sup. Ct. July 1, 1925).

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

DAUES, P. J.—This is an action by plaintiff, a surgeon, against defendants, husband and wife, to recover the value of two surgical operations performed by plain-

tiff upon the children of defendants. There was a verdict on the first count of the petition for plaintiff and against defendant Walter D. Thompson alone in the sum of $1500, with interest, totaling $1615.25, and against both defendants in the sum of $1,000, with interest, aggregating $1076.83, on the second count. Judgment was entered on the verdict and defendants have appealed.

In the first count of the petition it is alleged that on July 22, 1923, at the special instance and request of defendants, plaintiff performed an operation for sepsis, peritonitis, abdominal abscess and appendicitis on Marian Thompson, a daughter of defendants; that the fair and reasonable value of plaintiff's services for same was $3020; that, though demand had been made, no part of said debt had been paid.

The second count is based upon a charge of $1070 for an abdominal exploratory and appendectomy operation performed by plaintiff upon Mabel G. Thompson, an older daughter, on July 28, 1923.

Defendants separately filed answers in the form of general denials.

Plaintiff's evidence discloses that he was called to the home of defendants in St. Louis, Missouri, on July 22, 1923, by Mr. Thompson, for consultation with the family physician, Dr. Armand Ravold, with reference to the condition of defendants' younger daughter, Marian, thirteen years of age, and that upon examination he found that the child was then in a most serious condition, suffering from appendicitis and other complications. The child was rushed to a hospital and an operation was performed the same evening. After the incision was made into the abdominal cavity it was found that the appendix was gangrenous and broken, and that the several organs of the body were involved, and that peritonitis had set in. All of these conditions were corrected. The patient remained in the hospital for three weeks and was under plaintiff's care at her home for a week or ten days longer, or for a total of thirty-one days. In addition to

the consultation with Dr. Ravold and the operation, plaintiff made twenty-nine hospital visits, nine house visits and had the child at his office five times for the use of X-rays. Her recovery was complete.

There is ample evidence that the fair and reasonable value of plaintiff's services in this case was in excess of the verdict of $1615.25.

When Marian was operated upon, Mrs. Thompson and the older daughter, Mabel, about twenty-one years of age, were out of the city. After her return, Mrs. Thompson informed plaintiff that their daughter, Mabel, had been diagnosed as having appendicitis and arranged with him to come to their home and examine her. This examination was made on July 26, 1923, and plaintiff advised an operation for chronic appendicitis. Both Mr. and Mrs. Thompson "agreed to an operation," which was performed at St. Luke's Hospital on July 28, 1923. This was simply an appendicitis operation. In this case, plaintiff made nineteen hospital visits and seven home visits. This operation also was successful.

The evidence disclosed that the fair and reasonable value of plaintiff's services in this case was $1060.

Defendant Walter D. Thompson testified that he, and he alone made the contract of employment of plaintiff to treat both the children, and that it was agreed that the amount should be "reasonable and satisfactory." Mrs. Thompson denied that she either employed or authorized the employment of plaintiff for the services rendered either of the children.

At the close of all the evidence, the court gave a peremptory instruction to find for Mrs. Thompson on the first count of the petition, covering the operation on the younger daughter, Marian.

It is first contended that the court erred in admitting evidence, over defendants' objection, with reference to plaintiff's training and experience, and especially with reference to his former services in the medical corps of

the army.   During plaintiff's direct examination, his
counsel sought to show that both in civil life and during
the World War, when he was a lieutenant colonel in
charge of a surgical hospital in France, plaintiff's ex-
perience had been such as to require of him more than
ordinary attention to appendix and kindred afflictions.
Defendants conceded that plaintiff was a surgeon of
standing and ability, and argue that for that reason his
qualifications were not in dispute and that evidence of
such nature was therefore immaterial and prejudicial.
We think, however, that this evidence was admissible.
It has been expressly held that in an action by a physi-
cian or surgeon for professional services rendered by him,
it is competent for him to show that he possessed learn-
ing and skill, and that such evidence should be considered
by the jury in estimating the value of the services ren-
dered.   [Morrell v. Lawrence, 203 Mo. 363, 101 S. W.
571.]

The next alleged error assigned in the action of the
court in refusing the instructions in the nature of de-
murrers to both counts of the petition requested by de-
fendant Mrs. Mabel Green Thompson at the close of
plaintiff's case, and again at the close of the whole case.
Since she did not stand upon the first demurrer, but put
in her own evidence, we are concerned only with the de-
murrer offered at the close of all the evidence, and in-
asmuch as the court peremptorily instructed the jury to
find for her upon the first count of the petition, the only
question left for our determination is whether she is
liable on the second count, that is, for the operation per-
formed upon the adult daughter, Mabel.   It is conceded
in the brief that defendant Walter D. Thompson is lia-
ble on both counts.

Learned counsel argue that Mrs. Thompson could
not be held liable under the second count of the petition
unless there was evidence that she ordered the services
of plaintiff and promised to pay for same, since her
daughter Mabel was an adult at the time the operation

was performed upon her. This daughter was over eighteen years of age at the time, and under the law as it then stood, she was an adult.

Before analyzing the evidence under this demurrer, we deem it in place to state that the record discloses that the plaintiff, after the daughters had recovered, first rendered a bill against Walter D. Thompson alone for $3500. When payment on this was refused because Thompson considered same unreasonable, plaintiff then joined the wife in the account and brought suit against both defendants for $4090. In the itemized statement attached to the petition in this suit plaintiff made a charge of $2500 for the first operation and a charge of $750 for the operation on the adult daughter; he charged $50 for the first call on the younger daughter and $50 for administering the anesthetic on the same day. On the adult daughter $25 was charged for the anesthetic, and for each call made thereafter a charge of $10 was made, so that when plaintiff made two calls a day at the hospital to see both children he would charge $40 per visit for that day. However, the-jury has determined the amount of reasonable and fair compensation, and the evidence is ample to support such verdict.

Now, let us see what the evidence is to fasten liability upon Mrs. Thompson for the services rendered the adult daughter. She had nothing whatsoever to do with plaintiff's employment as to the first child, because she was not in St. Louis at the time. Plaintiff testified that he had a conversation with Mrs. Thompson as to the condition of the older girl; that he arranged with Mrs. Thompson to go to the house and examine the daughter; that he did so and advised an operation for chronic appendicitis. Then, giving plaintiff the most favorable inference from this testimony, it is that plaintiff at the request of Mrs. Thompson examined the girl and advised an operation upon her. Plaintiff testified further, as follows:

"Q. After having given that advice what directions, if any, were given to you by Mr. and Mrs. Thompson? A. They agreed to an operation and we operated on the first case Sunday night, and the second case, I think, the following Saturday."

That is all of plaintiff's proof, as we read it, which would support the idea of a contract being made by the wife to pay for the operation on the adult child. The answer would import, as we understand it, very clearly and unmistakably, that Mrs. Thompson gave her consent as a mother that the operation should be performed. What has been said above is all that is contained in plaintiff's case to support an express or implied contract on the part of the wife to be liable for this debt.

In the defendants' case, Mrs. Thompson testified, and a part of this testimony on cross-examination is sought by counsel for plaintiff as an aid to plaintiff's case. We will later set out the exact questions and answers relied upon. So that the purpose and effect of these questions and answers may be properly understood, it should be stated that Mrs. Thompson testified on direct examination that her husband, Mr. Thompson, employed Dr. Morfit to operate on the older daughter, and that he and he alone did so. On cross-examination, she more than once testified that she did not make such employment, nor that she in anywise directed plaintiff to perform the operation. She said that as a matter of course she talked to the doctor about the child's illness, and that she consented to an operation. Then counsel for plaintiff asked the following question: "There wasn't any design on your part to put yourself in a position so that nothing could be collected from you, was there?" She answered: "Not at all." And, further: "So, you did tell the doctor to go ahead and operate?" She replied: "I did not." Then this further question and answer appears:

"Do you know, or remember, whether there was any plan or purpose on your part to evade having any talk

with Dr. Morfit which would fasten liability on you in case he did operate? A. I had the greatest and friendliest feeling for Dr. Morfit; I couldn't have felt things like that.''

The defendant, as we see it, has not aided plaintiff's case by this answer when the whole of her testimony is considered. This defendant maintained that her husband employed the surgeon and made the contract to pay him a reasonable fee; that she had nothing to do with it; that she did not directly or indirectly authorize the operation. Then it was that she was asked whether she intentionally placed herself in a position where her words or conduct could not be counted against her on the question of her liability, and she answered: "Not at all." This does not lend any weight whatsoever to plaintiff's case that there was an implied contract on her part to pay for this service. But, we might add, if the question of plaintiff's counsel assumes the position that Mrs. Thompson did studiously avoid saying anything or doing anything which would lead the surgeon to understand that she was to be held for the services, then of course plaintiff's case would be taken up by the roots so far as this defendant is concerned.

Then we go back to plaintiff's testimony that both Mr. and Mrs. Thompson agreed to the operation after Mrs. Thompson had requested the doctor to examine the second child. This, we think, is not sufficient. In Rankin v. Beale, 68 Mo. App. 325, and Crowell v. Donoho, 168 Mo. App. 305, 153 S. W. 1082, it was held that a mere request from a parent to a physician to attend a child of full age and for whom such parent is not legally bound to provide for, though sick at the parent's home, does not raise an implied promise on the parent's part to pay for such medical services. The rule thus stated is often discussed. The latest case from our Supreme Court is Morrell v. Lawrence, 203 Mo. 363, 101 S. W. 571, and it is upon this case principally that plaintiff's counsel

rely.  In that case the court said, at pages 373 and 374 of that opinion:

"From those decisions the learned counsel citing them draw the conclusion that a promise to pay the bill is not implied from the fact that a father calls a physician to attend his sick son who is a man of mature age, and to that extent we think the conclusion is justified, but we do not go with the counsel to the extent of holding that a father calling a physician to attend his adult son can be rendered liable only on an express contract, because we hold that the circumstances or conditions may be such as to lead the physician to believe, and to charge the father with knowledge that the physician does believe, that the father is undertaking to pay for the services to be rendered.  Whilst the calling of a physician to the bedside of a sick man has in the nature of the case its own elements of exception to the general rule, yet it is not put so far in a class to itself as to exempt it entirely from the category of implied contracts.  Whether the facts of a case are such as to present a question of whether or not a contract may be implied is sometimes a question of fact and sometimes one of law; if in the facts relied on, taken as true, there is nothing to justify the inference the court will so decide as a matter of law, but if they are such as that if credited the inference might or might not legitimately be drawn, it is a question of fact."

Observably, then, following what the Supreme Court said, we must determine whether this record, taken with the most favorable inference for plaintiff, presents a question of law or of fact on the question of whether or not the contract could be implied as against Mrs. Thompson.  We cannot escape the view that there is not enough here to make that a question of fact for the jury.  From plaintiff's evidence it clearly appears that Mrs. Thompson had nothing to do with the employment of plaintiff for the first child.  The husband attended to all of that.  When she arrived in the city of St. Louis with the sec-

ond child, the plaintiff had already operated on the first child, and she then asked the doctor to look at the condition of the second child. He did so, and he testified that then both of the parents agreed to an operation. Nothing else is adduced to show that this defendant by word or deed intended to make herself liable for the fees of the second child, or that plaintiff intended to hold her in such account or that he was led to understand that she was to be so regarded. All the evidence is the other way. That being so, the court improperly allowed the case to go to the jury as against Mrs. Thompson on the second count, and the demurrer of Mrs. Thompson should have been sustained. There is no evidence whatsoever in the record as to whether the adult daughter was wealthy or possessed any means. Though the proof of the age of the second daughter is not given in exact terms, it is not doubted that the evidence shows she was over eighteen years at the time, and indeed this is not denied. A reported case from the Supreme Court of California, opinion by Judge WILBUR, is very instructive in the consideration of this case by us. [See McClenahan v. Keyes, 206 Pac. 454.]

Lastly, it is argued that the verdict is so grossly excessive as to indicate prejudice on the part of the jury. In fact, learned counsel go so far as to assert that where a surgeon's charges are unreasonable and excessive, the court may take judicial notice of such fact.

Courts take judicial notice only of such facts as are commonly known to all persons of ordinary intelligence. However, judicial notice must be exercised with caution and every care must be taken that the requisite notoriety exists. If there is a reasonable doubt as to whether sufficient notoriety exists, such doubt must be resolved on the negative. [Timson v. Coal & Coke Co., 220 Mo. 580, 596-98, 119 S. W. 565.]

The fair and reasonable value of plaintiff's services was in this case for determination. This was peculiarly

a question for the jury upon the evidence adduced, all of which tended to support the amount of plaintiff's claim.

From what has been said, it follows that we hold that as to defendant Walter D. Thompson the judgment is affirmed; as to defendant Mabel Green Thompson the judgment is reversed. *Becker, J.,* concurs; *Nipper, J.,* dissents in a separate opinion.

### DISSENTING OPINION.

NIPPER, J.—I concur in the majority opinion in so far as it affirms the judgment against Walter D. Thompson. I think the judgment should be affirmed against both defendants, and therefore I dissent as to that portion of the opinion reversing the judgment against Mabel Green Thompson, and will briefly state my reasons therefor:

Plaintiff recovered judgment against both husband and wife, on the second count of the petition, for the operation and attendance on the elder daughter, Mabel. It was the wife, Mabel Green Thompson, who called Dr. Morfit, the plaintiff, for the purpose of having him make an examination of her daughter, Mabel. In compliance with her suggestion and request, he made this examination, and she, as well as her husband, agreed to the operation.

Even though it be conceded that the daughter was over eighteen, she was living at home with her parents, and the evidence does not disclose that she had any means of her own, nor is there anything from which it could be inferred that the parents expected her to pay this bill. In fact, it is not contended here that she is in any way liable, but the contention is that the father alone is liable. The leading case upon this proposition in Missouri is Morrell v. Lawrence, 203 Mo. 363, 101 S. W. 571. In that case a father called a doctor to treat his son. The son was forty-two years of age, and not living with his

father, but at a hotel, and was a man of considerable means, conducting his own business. The son became ill, and the father sent a telegram to the doctor, telling him that the son was quite sick and that he would like to have him treat him. Upon the doctor's arrival at the father's house, he was taken to see the son who was sick, and he afterwards treated the son and took care of him in a professional way. The father sought to avoid liability, on the theory that he had made no contract to pay the doctor for his services, and that his son was more than twenty-one years of age. A number of cases were discussed by the court in that opinion.

A parent who calls a doctor to treat an adult child is not liable for the payment of the doctor's bill if there is nothing else in the case to indicate the intention on the part of the parent to pay. Judge VALLIANT, in discussing this rule in the Morrell case, l. c. 371, said:

"And we see no objection to applying the rule to the case of a father calling a physician to wait on his son if the son is of age and living to himself and if there is nothing in the conditions to indicate that the father is taking upon himself anything more than the office of messenger for his son. But there is something more than the dictates of common humanity between father and son and the fact of that relationship is to be considered in connection with other circumstances, if there are other circumstances, indicating to the physician that the father calls him on his own account to serve his son."

The mere fact, alone, that Mabel Green Thompson, the defendant, called the doctor to treat her adult daughter, would not perhaps be sufficient to make her liable for the payment of the doctor's bill. But every fact and circumstance in this case indicates clearly that the mother as well as the father should be held liable for the treatment of this elder daughter. The daughter was not living to herself, but was living with her parents. It was the mother, and not the father, who called the doctor to

see her. The daughter was not in business for herself, nor had she any means, so far as this record discloses, of paying the doctor for his services. The relationship of the parties, the circumstances surrounding the transaction, all indicated to the physician that either the father or mother or both intended to become liable for the treatment of their daughter. At least it was a question of fact for the jury to determine whether or not an implied contract between the doctor and the mother could be inferred; and we should not say as a matter of law that the mother was acting as a mere messenger for her daughter.

For these reasons I think the judgment should be affirmed as to both defendants.