DR. J. E. GLENN, RESPONDENT, v. J. E. THOMPSON, APPELLANT.—61 S. W. (2d) 210.

St. Louis Court of Appeals. Opinion filed June 20, 1933.

Motion for rehearing overruled July 3, 1933.

Certiorari denied by Supreme Court August 2, 1933.

*Fred D. Wilkins* and *J. D. Hostetter* for appellant.

*May & May* for respondent.

McCULLEN, J.—This is an action by respondent, a surgeon, hereinafter called plaintiff, to recover an alleged unpaid balance of a fee for professional services rendered to appellant, hereinafter called defendant. A trial before the court and a jury resulted in a verdict for plaintiff in the sum of $482.80. From the judgment rendered thereon defendant appeals.

This is the second time the case has been before this court on appeal. At the first trial there was a verdict and judgment for defendant. This court reversed the judgment in an opinion which is reported in Glenn v. Thompson, 45 S. W. (2d) 948.

The services for which the balance due is claimed were rendered by plaintiff in treating defendant for uremic poisoning and in performing a preliminary and final operation in removing defendant's prostate gland. Plaintiff alleged that the services rendered covered

a period of forty-one days, beginning on the evening of February 21, 1928; that the services were reasonably worth the sum of $1230, which plaintiff afterwards consented to reduce to $1050; that defendant had paid on account of said bill the sum of $500, leaving a balance due of $550, for which sum, together with interest from August 15, 1928, plaintiff prayed judgment against defendant.

Defendant's answer, in substance, admitted the services were rendered by plaintiff to defendant, and alleged that defendant had paid plaintiff the sum of $500, and that said sum was all that the services were worth, and that defendant owes plaintiff nothing on account of such services.

The answer further alleged that plaintiff and Dr. C. E. Burford were partners at the time of the rendition of the services, and still are partners, and that Dr. Burford, by virtue of such partnership, is interested in the subject-matter of plaintiff's suit, but is not a party to said suit. It was alleged that there was a defect of parties plaintiff, and that plaintiff alone ''has not the legal capacity to maintain this suit.''

The reply was a general denial of new matter.

Defendant's first contention is that there was a defect of parties plaintiff because the debt was shown to be due to a partnership consisting of plaintiff and Dr. C. E. Burford, and that the suit was brought only by an individual partner; that this issue was raised by the answer and that the court should have sustained defendant's demurrer to the evidence offered at the close of plaintiff's testimony, and also at the close of all the testimony.

It will be noted that defendant's answer admits plaintiff did render medical attention to him and avers ''defendant has paid plaintiff the sum of $500.'' The evidence is undisputed that defendant did pay plaintiff a total sum of $500 in two payments of $250 each. From such evidence it appears that defendant himself recognized his obligation as one owing to plaintiff as an individual.

Upon defendant's arrival at the hospital in the City of St. Louis, he was met by plaintiff, as a result of arrangements made through Dr. Biggs, his own personal physician who accompanied him to St. Louis, from Bowling Green, Missouri, defendant's home. Dr. Burford and plaintiff both practice their profession in St. Louis, but Dr. Burford was absent from St. Louis at the time defendant entered the hospital. The evidence shows that from that time until the services were completed defendant dealt with plaintiff individually as his surgeon; that he and his wife had all their conversations concerning the management of the case with plaintiff; that defendant placed himself under the care of plaintiff and at all times recognized plaintiff as the surgeon in full charge of his case; that after he went back to his home defendant wrote letters to plaintiff, discussing the fee to be paid to plaintiff, and finally he paid plaintiff the amount.

he thought sufficient for the services. In all these transactions there is nothing to show that defendant or plaintiff at any time contemplated that the debt for the services was owing to anyone but plaintiff alone. It is true Dr. Burford assisted plaintiff in rendering service to defendant, but we do not believe that changed plaintiff's status as the real party in interest in view of the circumstances of the employment shown in evidence, and in view of plaintiff's and defendant's dealings with each other. The fact that plaintiff and Dr. Burford had a collateral agreement whereby they were to divide the fee on some basis not disclosed by the evidence does not, in our opinion, affect the right of plaintiff to bring this suit as the real party in interest.

In Quinn v. Van Raalte, 276 Mo. 71, 205 S. W. 59, 69, our Supreme Court said:

"Plaintiff's actual interest in the subject-matter of the transaction has, we think, been sufficiently shown. She executed the note as evidence of a payment of a part of the purchase money, and gave the deed of trust to secure the payment of same. She was possessed of the complete legal title to the property. *A recovery by her in this proceeding will fully protect the defendant if another action be brought against him upon the same state of facts.* These facts authorize the conclusion that the plaintiff is the real party in interest. . . . If it be true, of which there was no testimony, that plaintiff had a collateral agreement with her husband by which he was to be entitled to some portion of the proceeds arising from the sale of the land, *this would in nowise affect her status as the real party in interest.*" (Italics ours.)

In Keeley v. Indemnity Co. of America, 222 Mo. App. 439, 7 S. W. (2d) 434, this court said:

"It might be added that there is reason to believe that the defendant cannot raise the objection that plaintiff is not the real party in interest, for it has been said by lawwriters and cases from other jurisdictions that *if the defendant is protected from another suit on the same matter he may not raise this objection.*" (Italics ours.)

Under the evidence in the case at bar, aside from an assignment to which we will presently refer, it is clear that defendant is fully protected from another suit against him for the same matter. Plaintiff introduced in evidence an assignment by Dr. Burford to plaintiff of all the right, title or interest of Dr. Burford in the account sued on by plaintiff. Under this assignment there can be no question that defendant is completely protected against any future claim growing out of the same matter. Our Supreme Court, quoting with approval Pomeroy, on Remedies and Remedial Rights, has said:

"It is now settled by a great preponderance of authority, although there is some conflict, that if the assignment, whether written

or verbal, of anything in action is absolute in its terms, so that by virtue thereof the entire apparent legal title vests in the assignee, any contemporaneous, collateral agreement by virtue of which he is to receive a part only of the proceeds . . . or even is to thus account for the whole proceeds, or by virtue of which the absolute transfer is made conditional upon the fact of recovery . . . does not render him any the less the real party in interest; he is entitled to sue in his own name, whatever collateral arrangements have been made between him and the assignor respecting the proceeds. *The debtor is completely protected by the assignment.*" [Guerney v. Moore, 131 Mo. 650, 668, 32 S. W. 1132.]   (Italics ours.)

The assignment herein was made by Dr. Burford to plaintiff long after this suit was filed, but before the trial. This does not, in our opinion, affect plaintiff's right to bring the suit as the real party in interest. The assignment is absolute on its face, it assigns the entire cause of action, and its validity as between the assignor and assignee is not disputed or questioned. Defendant is as completely protected thereby from any further claim for the same matter, and the purpose of the statute requiring suits to be brought by the real party in interest, Revised Statutes of Missouri, 1929, Section 698 (Mo. St. Ann., sec. 698), is as fully accomplished as though the assignment had been made before suit was filed. [Todd v. Crutsinger, 30 Mo. App. 145, 146.]   We hold that plaintiff is the real party in interest herein and the court did not err in overruling defendant's demurrers to the evidence.

Defendant's next contention is that the court conducted the trial on the theory that the reasonable value of the services rendered by plaintiff to defendant was dependent upon defendant's financial status and that, therefore, the court erred in giving plaintiff's Instruction No. 1, which included "the ability at the time of the rendition of said services, of the patient to pay therefor." Also, that the court erred in refusing defendant's Instruction No. 2, which told the jury that the ability or inability of the defendant to pay the reasonable value of the services cannot be considered by the jury or taken into consideration in determining the reasonable value of such services. In this connection it is further contended by defendant that the court erred in permitting plaintiff to introduce in evidence assessment lists, deeds of trust, titles to real estate owned by defendant, and also owned by defendant and his wife.

Counsel for defendant argued that the reasonable value of services rendered by a surgeon to a patient does not depend on the wealth of the patient, or his ability to pay. On the other hand, counsel for plaintiff contend that the ability of defendant to pay the reasonable value of the services was a proper question; that the evidence thereon was properly admitted and the jury were properly instructed.

Plaintiff's Instruction No. 1 told the jury a number of elements

which they should consider and take into account in determining the reasonable value of the services rendered by plaintiff to defendant. It is unnecessary to present here the instruction in its entirety. For the purpose of determining the question here involved, it is sufficient to say that the instruction told the jury that they should consider "the ability at the time of the rendition of said services, of the patient to pay therefor."

Defendant's Instruction No. 2, which the court refused to give, told the jury that, "the financial condition, ability or inability of the defendant to pay plaintiff the reasonable value of the services . . . cannot be considered by the jury or taken into consideration" in determining the reasonable value of plaintiff's services.

We are of the opinion that the court committed error in giving plaintiff's Instruction No. 1, and in refusing defendant's Instruction No. 2.

In a very carefully considered case, our Supreme Court has passed upon this very question. In Morrell v. Lawrence, 203 Mo. 363, 101 S. W. 751, plaintiff, a physician, sued defendant upon an implied contract of defendant to pay plaintiff the reasonable value of his services as a physician rendered to the defendant's son at the defendant's request. There was a trial and judgment for plaintiff. The trial court sustained defendant's motion for a new trial on one ground, among others, that there was error in an instruction given. From the order granting the new trial plaintiff appealed to the Supreme Court, where the order of the trial court in granting the new trial was affirmed. In that case it was shown in evidence, over the objection of the defendant, that he was a wealthy man. Instruction No. 2 in that case told the jury what the various elements were which they should take into account and consider in determining the reasonable value of the services rendered by the plaintiff therein to the defendant. Among these elements was "the ability of the person liable therefor, to pay." The court said:

"We are referred to some decisions as sustaining the proposition that the fact that a man is amply able to respond to a judgment for the debt sued for is one to be taken into account in determining the amount to be awarded against him, but to the extent that those cases so hold we do not agree with them."

After a discussion of several cases, the court went on to say:

"In a case of this kind, if the plaintiff is entitled to recover at all, he is entitled to recover the reasonable value of the services rendered. He is entitled to a verdict for the reasonable value of his services, although the defendant may be a poor man; he is not entitled to a verdict for more than the reasonable value of his services, although the defendant may be a man of great wealth. *The jury, in a case of this kind, have no concern with the question of the defendant's ability to satisfy the judgment.*" (Italics ours.)

In the same case, Morrell v. Lawrence, supra, the trial court had given another instruction, in which the jury were told that:

"The evidence touching the financial ability of the defendant may be considered by the jury not to enhance the fees above a reasonable compensation, but solely to determine whether the defendant, if they find, under the other instructions, he is liable at all, is able to pay a fair and just and reasonable compensation for the services rendered to this son."

With respect to the last mentioned instruction, the court said:

"Instruction No. 3 did not cure the error in this respect of Instruction No. 2; it justified the jury in believing that there was a difference between the reasonable value of services rendered a rich man and those of the same kind rendered a poor man. There is no such difference."

Counsel for respondent undertake to distinguish the case at bar from the case of Morrell v. Lawrence, supra. We are unable to agree with their view in the face of the clear and unequivocal language of our Supreme Court set forth above. Under the authority of Morrell v. Lawrence, supra, we hold that the trial court committed reversible error in giving plaintiff's Instruction No. 1 herein, and refusing defendant's Instruction No. 2.

When this case was here on the first appeal it was held on the record then before the court that defendant had, by his evidence, raised the issue of a lower standard of charges for similar services and that the trial court erred in refusing, under such circumstances, to permit plaintiff to show in rebuttal, defendant's financial condition. In the first trial defendant introduced and read in evidence the cross-examination of plaintiff, and of Dr. Burford, as shown in their respective depositions. In those depositions defendant brought out on the cross-examination of the witnesses, that they made lower charges for similar services to some patients, and that in fixing their charges they considered the ability of the patient to pay. In the second trial, however, as shown by the record now before us, defendant refused to read in evidence the cross-examination of plaintiff and Dr. Burford, whereupon, they were read in evidence by plaintiff. They thereby became plaintiff's testimony. It is now claimed by counsel for plaintiff that the cross-examination of plaintiff, and of Dr. Burford, in the depositions mentioned, although introduced by plaintiff, constitute a basis for rebuttal testimony by plaintiff.

We believe it cannot be said to be any basis for rebuttal testimony since it was plaintiff's own testimony which plaintiff was seeking to rebut. This cannot be done under the circumstances here in evidence. Defendant did not introduce such testimony, hence the evidence as to defendant's financial standing was not in rebuttal of anything that defendant had introduced in so far as the depositions were concerned. Rebuttal evidence has been defined as,

"That evidence which is given by a party in the cause to explain, repel, counteract or disprove facts given in evidence on the other side." [Seibel-Suessdorf, etc., v. Manufacturers' Co., 230 Mo. 59, 130 S. W. 288, 293.]

In Glenn v. Stewart, 167 Mo. 584, 593, 67 S. W. 237, it was said: "Testimony in rebuttal should be carefully and strictly limited to disproof of the testimony adduced by the defendant."

Objections to evidence tending to show defendant's "ability to pay" were made by defendant at various times during the trial and overruled by the court, to which action of the court defendant saved his exceptions. Defendant did not waive his right to a review of such rulings by cross-examination of the witnesses after the adverse rulings. [Barker v. Railroad, 126 Mo. 143, 28 S. W. 866; McCue v. Schweer, 221 Mo. App. 1029, 295 S. W. 816.]

It appears from the record that the trial court was of the opinion that such evidence was proper on the theory of rebuttal. At first blush there may appear to be some justification for this view in the above mentioned Morrell case in that part of the court's opinion wherein the court states the exception to the rule laid down in this kind of a case. The record shows that defendant, in the second trial refrained from offering or introducing evidence which, under the view we take of the Morrell case, would raise in the case the issue of "ability to pay." Defendant himself testified in the first trial, but in the second trial he did not testify at all.

As we read the opinion of our Supreme Court in the Case of Morrell v. Lawrence, supra, it is only where defendant introduces evidence to show that plaintiff charged smaller fees for similar services to certain particular patients that plaintiff is permitted to show by rebuttal evidence that the smaller fees were charged to poor men because of their poverty. In other words, a plaintiff is allowed, under such circumstances, to show the reason for the smaller charge and show, if he can, that such smaller charges were below the reasonable value of the services; that they were exceptions and not up to the customary and usual charge made to those who are able to pay the reasonable value thereof, and in that connection to show defendant's financial status to prove that it "does not entitle him to such indulgence." To that extent only, and for rebuttal purposes only may such evidence become proper to be shown in this kind of a case. Upon the retrial of this cause, if this issue is raised, the court should confine the evidence thereon strictly to proper rebuttal evidence, that is to say, it should be admitted only to rebut evidence introduced by defendant, if any, of lower fees charged by plaintiff for similar services to certain patients. This we believe to be the true meaning and purpose of the rule and the exception thereto, as laid down by the Supreme Court in Morrell v. Lawrence, supra. The strong language used by the Supreme Court in that case in stat-

1096

ing the rule must be kept in mind in considering the exception to the rule which was also stated. It certainly was not the intention of the court, in stating the exception, to authorize thereby the admission of evidence of a defendant's financial standing, or ability to pay, in such a manner as to render the rule itself futile and completely defeat its purpose, which would be the result if such evidence be not held strictly within the confines of proper rebuttal.

Regardless of what the rule may be in some other states as to the admissibility of evidence and the propriety of instructions relating to a patient's financial ability to pay for services rendered to him by a physician or surgeon, our Supreme Court has definitely and positively held that the jury in such a case "have no concern with the question of the defendant's ability to satisfy the judgment."

For the errors noted the judgment is reversed and the cause remanded for another trial. *Becker, P. J.,* and *Kane, J.,* concur.