The STATE of Missouri at the Relation of Max W. KRAMER, Relator,

v.

Michael J. CARROLL, Judge of Division 2 of the Circuit Court of St. Louis County, Missouri, Sitting as Judge of Division 6 Thereof, Respondent.

No. 29944.

St. Louis Court of Appeals.

Missouri.

Feb. 4, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 28, 1958.

Jerome Kalishman, Joseph Chused, St. Louis, for relator.

Irl B. Baris, St. Louis, for respondent.

HOUSER, Commissioner.

This is an original proceeding by Max W. Kramer, relator, in which he seeks a writ of prohibition to prevent Honorable Michael J. Carroll, Judge of Division 2 of the Circuit Court of St. Louis County sitting as Judge of Division 6, from proceeding further in the case of Roberta Kramer, plaintiff, v. Max W. Kramer and Mae Kramer, defendants, Cause No. 210,148 now pending in that court, or in lieu thereof to prohibit the enforcement "in any way whatsoever" of a subpoena duces tecum issued by order of that court commanding relator to appear before a notary public at a certain time and place "then and there to testify, and the truth to speak * * *" in the aforesaid case and to bring with him and produce in evidence certain records. We issued our preliminary writ commanding respondent to make return and show cause why final judgment in prohibition should not be entered as prayed and directing him to take no action in the premises until the further order of this court. Respondent's return, relator's answer and respondent's reply to relator's answer were filed in due course.

The pertinent admitted facts are these: At the time of the filing of the petition for the writ of prohibition the above described action was pending, in which Roberta Kramer, an adult incapacitated woman, sought a declaratory judgment against her divorced parents establishing the parents' duties of support and maintenance and an order for periodic payments of support money. A notice to take depositions was served upon relator on June 25, 1957. On June 26 counsel for Roberta obtained an order of court for the issuance of a subpoena duces tecum as aforesaid. The records described in the subpoena were as follows:

"(1) All copies of your personal income tax returns, Federal and State, for the years 1947 through 1956, inclusive.

"(2) All records and documents relating to contributions and support expended by you for the benefit of Roberta Kramer."

The subpoena was served upon relator on June 26. The taking of the depositions, set for July 2, was by agreement passed to July 10. Relator filed a motion to quash the subpoena duces tecum. That motion was heard and overruled by respondent on the morning of July 10. Thereafter Roberta's counsel filed a motion to reject relator's answer filed in Cause No. 210,148, under the provisions of § 491.180 RSMo 1949, V.A.M.S., for contumacious refusal of relator to attend the depositions as required by the subpoena. That motion is pending and undisposed of in the circuit court.

The petition for writ of prohibition attacks the subpoena duces tecum as void upon its face, unreasonable and oppressive on the ground that it commands the production of evidence which is irrelevant and immaterial to the issues in Cause No. 210,148 and for the reason that the documentary evidence sought in item 2 of the subpoena duces tecum is not sufficiently designated or described, in that there is no limitation as to the period of time covered by the request, it does not specify the type of records and documents desired and is not restricted to such records and documents as are in relator's possession or under his control. Relator's prayer sought to prohibit respondent "from proceeding further with

the cause; or in lieu thereof, for a writ of prohibition prohibiting the enforcement of the aforesaid subpoena duces tecum in any way whatsoever, * * *."

The case was argued and submitted upon the pleadings.

■ First for decision is respondent's contention that the preliminary writ should be quashed because the question raised is moot; that upon relator's failure to appear at the convening of the deposition the subpoena duces tecum became a *fait accompli* and that the propriety of requiring the production of the documents became moot; that the act sought to be prohibited is complete and that the writ will not issue when the act sought to be prohibited is already done; that prohibition cannot undo that which has taken place. A question is moot when the question presented for decision seeks a judgment upon some matter in which the rendition of a judgment could have · no practical effect upon any then existing controversy. Preisler v. Doherty, 364 Mo. 596, 265 S.W.2d 404. Our judgment in prohibition passing upon the validity of the subpoena duces tecum will have a direct bearing upon at least one phase of an existing controversy, namely, the motion of Roberta to reject and strike from the files relator's answer for failure to respond to the subpoena, which motion has not been disposed of but which is still pending in the circuit court. In this connection see State ex rel. Atchison, T. & S. F. R. Co. v. Trimble, 254 Mo. 542, 163 S.W. 860. The question is not moot.

■ Another preliminary point raised by respondent is that a permanent writ should be denied because this court should not undertake to interfere with or control the exercise of discretion by the circuit court in passing upon the aforesaid motion of Roberta to reject and strike. While it is true that under § 491.180, supra, the striking of or refusing to strike a pleading for refusal of a    party to testify is a matter

resting within the discretion of the trial court, Graveman v. Huncker, 345 Mo. 1207, 139 S.W.2d 494, there would be no room for the exercise of that discretion if the trial court has no jurisdiction over the motion, and the latter question (jurisdiction or lack of it) is the question posed here.

Turning to the merits, relator in his brief raises several points in support of his contention that the preliminary writ should be made permanent.

■■ . Relator claims that the trial court should be *prohibited from enforcing the subpoena duces tecum.* He argues that the documentary evidence sought in item 2 of the subpoena duces tecum is not sufficiently designated or described. Item 2 commands relator to produce " * * * All records and documents relating to contributions and support expended by you for the benefit of Roberta ·Kramer." Under the rulings in State ex rel. Burke v. Scott, 364 Mo. 420, 262 S.W.2d 614; State ex rel. Clemens v. Witthaus, 360 Mo. 274, 228 S.W.2d 4, and State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S.W.2d 383, 8 A.L.R.2d 1124, item 2 of the subpoena duces tecum was unauthorized and invalid for the reason that its omnibus language is too general and all-inclusive. A subpoena duces tecum to produce records and documents at the taking of a. deposition must designate and specify the records and documents sought with some reasonable degree of certainty and particularity. Item 2 contains no limitation as to the period of time involved and no specification, designation or identification of the type and kind of support records and documents desired. Respondent did not have jurisdiction to include in. the subpoena duces tecum such a broad and sweeping command and does not have jurisdiction to enforce that part of the subpoena.

■■ He also says that the documentary evidence sought in the subpoena is irrelevant and immaterial to the issues of this case. The documentary evidence thus

sought, other than item 2, was relator's personal income tax returns from 1947 to 1956. The trial court is without jurisdiction to require the production of documentary evidence at the taking of depositions "unless such evidence is first shown to be relevant and material to the issues in the pending cause." State ex rel. Phelps v. McQueen, Mo.Sup., 296 S.W.2d 85, loc. cit. 89. Relator urges that evidence of financial condition is irrelevant and immaterial because that issue is removed from the case by relator's admissions. The financial condition and ability of the party sought to be charged is a fact pertinent to the inquiry in an action for support and maintenance. It is not an "issue" in Cause No. 210,148, however, because it is an admitted fact in that proceeding. Roberta's petition alleged and relator specifically admitted in his answer "that defendant father is a practicing attorney in the City of St. Louis, enjoying a substantial income from the practice of law and other financial interests, and is well able to provide the necessities of life for plaintiff, * * *." Evidence is not necessary to prove an admitted fact. In this particular case respondent had no jurisdiction to command the production of the income tax returns.

Relator further claims that for several reasons the trial court should be *prohibited from proceeding further with the cause.*

■ Relator urges that the petition in Cause No. 210,148 does not and cannot state a claim for relief because there is no legal duty upon a parent to support an adult incapacitated child. Does a legal duty rest upon a father to support his adult unemancipated, unmarried and needy child who as a result of epilepsy is totally and permanently disabled from gainful employment, who from infancy has been either in hospitals or in the home of her parents and who has remained in the custody of her mother since the divorce of the parents? We hold that the father is under a legal duty to support his adult child in such case.

The obligation of a father to support his *infant* child, according to our Supreme Court, is "imposed and conferred by the laws of nature," and is enforced for the good of society upon grounds of public policy. In the Matter of Scarritt, 76 Mo. 565, loc. cit. 584, 43 Am.Rep. 768. Blackstone refers to the duty of parents to provide *for the maintenance of their children* as a "principle of the natural law," "an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world. * * * By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved." 1 Blackstone's Commentaries (Lewis's Edition) 419.

Sometimes the obligation is rested upon the interest of the state as parens patriae of the children, and the state shall not be burdened with their care. State v. Thornton, 232 Mo. 298, 134 S.W. 519, 32 L.R.A., N.S., 841; 39 Am.Jur., Parent and Child, § 35, pp. 632, 633.

The primary and basic reason for the imposition of this common law duty is the inability of infant children to take care of themselves. 39 Am.Jur., Parent and Child, § 35, p. 634; 67 C.J.S. Parent and Child § 15 a. In Brosius v. Barker, 154 Mo.App. 657, 136 S.W. 18, the obligation was put upon the basis of the helplessness of the child, in this language, 154 Mo.App. loc. cit. 662, 136 S.W. 19,

"The child comes into the world absolutely helpless and incapable of protecting itself. No creature is more helpless at birth than the human being, yet in some jurisdictions the courts hold that parents who have bestowed life, and have brought into the world these helpless creatures, are under no legal obligation to support or preserve them during the dependent period of their existence. * * * But the great weight of modern authority repudiates

this doctrine and declares it to be opposed to natural sense of justice."

In Kent's Commentaries on American Law, Vol. 2, p. 190, it is stated:

"The wants and weaknesses of children render it necessary that some person maintain them, and the voice of nature has pointed out the parent as the most fit and proper person. The laws and customs of all nations have enforced this plain precept of universal law. * * * The obligation on the part of the parent to maintain the child continues until the latter is in a condition to provide for its own maintenance, * * *."

The ability of the child to support himself may develop before the child attains his majority. Thus it is held that where a minor physically and mentally able to care for himself voluntarily abandons the parental roof, turns his back on its protection and influence and goes out to fight the battle of life on his own account the parent is no longer under an obligation to support him. Brosius v. Barker, supra.

▆ Ordinarily, however, in the absence of constitutional or statutory provisions or contractual relations to the contrary, the obligation of the parent to support a child ceases when the child reaches his majority. Morrell v. Lawrence, 1907, 203 Mo. 363, 101 S.W. 571; Schulte v. Schulte, Mo.Sup. 1940, 140 S.W.2d 51; Rankin v. Beale, 1897, 68 Mo.App. 325; Crowell v. Donoho, 1913, 168 Mo.App. 305, 153 S.W. 1082; Citizens' State Bank v. Shanklin, 1913, 174 Mo.App. 639, 161 S.W. 341; Winner v. Shucart, 1919, 202 Mo.App. 176, 215 S.W. 905; Morfit v. Thompson, 1926, 219 Mo. App. 506, 282 S.W. 113; Dickey v. Dickey, Mo.App.1939, 132 S.W.2d 1026; Bova v. Bova, Mo.App.1940, 135 S.W.2d 384; cases cited in 1 A.L.R.2d 914–919, both inclusive; 39 Am.Jur., Parent and Child, § 68; 67 C.J.S. Parent and Child § 17. The law regards the normal child as capable of supporting himself at the age of twenty-one years.

Engrafted upon this general rule is an exception recognized in the majority of the jurisdictions which have passed upon the question, stated as follows:

"* * * but where a child is of weak body or mind, unable to care for itself after coming of age, and remains unmarried and in the parent's home, it has been held that the parental rights and duties remain practically unchanged, and that the parent's duty to support the child continues as before. The obligation to support such a child ceases only when the necessity for the support ceases." 39 Am.Jur., Parent and Child, § 69, p. 710.

"The common law imposes on parents the duty of supporting their minor children only, except that in the case of children so weak mentally as to be unable to support themselves, the duty of the parent does not cease on the majority of the child." 41 Am. Jur., Poor and Poor Laws, § 7, p. 685.

"The legal liability for the support of the child ceases when it reaches the age of majority unless * * * it is in such a feeble and dependent condition physically or mentally as to be unable to support itself; * * * The obligation of a parent to support a helpless adult child terminates when the necessity of support ceases, * *." 67 C.J.S. Parent and Child § 17, p. 704.

The parent's obligation to support an adult child is the subject of an extensive annotation in 1 A.L.R.2d 910.

▆ A few jurisdictions hold that there is no liability upon the parent for support after the child attains majority, even though he is incapacitated. Napa State Hospital v. Flaherty, 1901, 134 Cal.

315, 66 P. 322; In re Northcutt, 1915, 81 Or. 646, 148 P. 1133, 160 P. 801; Moss v. Moss, 1931, 163 Wash. 444, 1 P.2d 916; Coldingham Parish Council v. Smith (1918), 2 K.B. (Eng.) 90; Beilstein v. Beilstein, Ohio App.1945, 61 N.E.2d 620. The basis of these decisions is that such an obligation must be imposed by statute. But the duty to support a minor child has not been held to depend upon statute. Contrary to the common law of England, by which a father was not legally bound to support his infant child, Huke v. Huke, 44 Mo.App. 308; 4 Vernier on American Family Laws 4, the courts of Missouri have imposed this obligation *by judicial decision.* In like manner our courts should depart from the common law rule of non-liability to support an adult child if that rule is not suited to the conditions and needs of the people of the state.

A large majority of the courts of sister states, forsaking the hard rules of the common law and following the "dictates of humanity," enforce the exception and continue the obligation into majority if the child is physically or mentally incapable of maintaining himself. See the citations of thirty cases from sixteen different jurisdictions compiled at 1 A.L.R.2d 921.

In Crain v. Mallone, 130 Ky. 125, 113 S.W. 67, loc. cit. 68, 22 L.R.A.,N.S., 1165, it was said:

"The duty and obligation of a parent to care for his offspring does not necessarily terminate when the child arrives at age or becomes an adult; nor is it limited to infants and children of tender years. An adult child may from accident or disease be as helpless and incapable of making his support as an infant, and we see no difference in principle between the duty imposed upon the parent to support the infant and the obligation to care for the adult, who is equally, if not more, dependent upon the parent. In either case the natural as well as

the legal obligation is the same, if the parent is financially able to furnish the necessary assistance."

Later cases overwhelmingly follow the majority rule.

Cohen v. Cohen, 1949, 6 N.J.Super. 26, 69 A.2d 752, loc. cit. 754:

"Ordinarily, the obligation of the parent to support ends when the child reaches full age, although it might continue indefinitely if the child were crippled or unable to support himself."

Van Tinker v. Van Tinker, 1951, 38 Wash.2d 390, 229 P.2d 333, loc. cit. 334:

"These authorities, and many others which might be cited, pronounce the rule to be that the legal duty of a parent to support his normal children ceases at the age of majority, but if any of them are so defective as to be incapable of self-support he owes a continuing obligation of support as long as. it is necessary. This obligation is one created by the common law."

In Pocialik v. Federal Cement Tile Co., 1951, 121 Ind.App. 11, 97 N.E.2d 360, loc. cit. 363, the court, after referring to some foreign decisions denying liability, said:

"The tendency in most jurisdictions in this country where the question has arisen, however, based upon either a construction of statutory law or a judicial expansion of the common law, is to find that there is an obligation to support defective children who are unable to support themselves upon attaining their majority. Some of these cases are predicated upon statute; others find a lack of emancipation; and still others find a legal obligation following the moral obligation."

After referring to the Indiana rule that the obligation to support a child ceases

when the child attains its majority, the court said, 97 N.E.2d loc. cit. 363:

> "There is, however, a continuing obligation of support which ceases only when the necessity of support ceases in the case of children of weak mind or body who are unable to support themselves after coming of age and remain unmarried in the parent's home."

In re Glass' Estate, 1953, 175 Kan. 246, 262 P.2d 934, loc. cit. 937:

> "A review of the above authorities leads to the conclusion that a parent has a common-law duty to provide support and maintenance for his minor children and that such duty extends and remains unchanged to a child who, on becoming of age, is in such feeble and mental condition physically and mentally as to be unable to maintain and support itself."

Davis v. Davis, 1954, 246 Iowa 262, 67 N.W.2d 566, loc. cit. 568:

> "It is true, as respondent suggests, that generally at common law a parent's obligation to support his child ends when the latter becomes of age. But there is an important, widely recognized exception to this rule where the child because of weak body or mind is unable to care for itself upon attaining majority. The obligation to support such a child ceases only when the necessity for the support ceases. Courts throughout the land have so held emphatically and eloquently. This case plainly falls within this exception to the general rule."

In Sayne v. Sayne, 1955, 39 Tenn.App. 422, 284 S.W.2d 309, loc. cit. 312, it was held that the father's obligation to support a disabled child who had not been emancipated and who resided in its parents' home continues even after the child reaches its majority. See case note, Tennessee Law Review, Vol. 24, p. 599.

It is impossible on principle to distinguish between the duty to support a twenty year old child incapacitated by infancy and the duty to support an adult unmarried, unemancipated and insolvent child incapacitated from self-support by mental or physical infirmity. The duty in both cases arises out of the helplessness of the child, and the drawing of a line in all cases at the age of twenty-one years is artificial and arbitrary.

Relator relies wholly on Kavanaugh v. Dyer O'Hare Hauling Co., Mo.App., 189 S.W.2d 157, for the proposition that the legal obligation to support a child ceases at the majority of the child without regard to the fact that the child is incapacitated. What the opinion *held* was that a mentally incapacitated twenty-nine year old daughter of a workman killed in industry who lived with and had always been supported by her mother and stepfather, and who had never lived with or received any support from her deceased father, was not "actually dependent" upon the workman within the meaning of the Workmen's Compensation Law as it was written prior to the 1943 amendment, V.A.M.S. § 287.-240, and that consequently the daughter was not entitled to compensation for her father's death. What the opinion *said*, directly or inferentially, about the legal liability of a father for the support of an adult incapacitated child was dictum under the issues in that case and is not to be followed in the instant situation.

Relator also urges that the petition below seeks a declaratory judgment as to the law on hypothetical facts since it does not allege that plaintiff is now without the necessities of life. Roberta alleged that she is permanently and totally disabled from being gainfully employed; that she is unable to support herself, that at this time relator has failed to contribute anything to her support; that because of her physical condition her financial needs are greatly increased; that because of relator's failure to recognize any present

parental duty relator is forcing plaintiff to become a financial burden on her mother and on society and that she will become a public charge; that her mother has no steady income and is unable to provide full necessities of life for plaintiff. The sum and substance of these allegations is that plaintiff is now without the necessities of life, and this point is ruled against relator.

Relator would have us prohibit respondent from proceeding further with the cause on the ground that a declaratory judgment in favor of Roberta would not terminate the controversy; that Cause No. 210,148 is a declaratory judgment action governed by § 527.060 RSMo 1949, V.A. M.S., which provides that the court may refuse to render a declaratory judgment which will not terminate the controversy; that in this state a child cannot directly compel a parent to furnish support, under Glaze v. Hart, 225 Mo.App. 1205, 36 S.W. 2d 684, and Worthington v. Worthington, 212 Mo.App. 216, 253 S.W. 443, so that the court could not in Cause No. 210,148 enter an order requiring the payment of a certain sum for support, and a subsequent action by a third person who furnished the necessities would be necessary to enforce such rights. One answer to this contention is that whether the trial court refuses to render a declaratory judgment on the ground that the declaration would not terminate the controversy is wholly discretionary. S. S. Kresge Co. v. Shankman, 240 Mo.App. 639, 212 S.W.2d 794. Another answer is that the court in a declaratory action may accord both declaratory and coercive relief. Union Nat. Bank v. Jessell, 358 Mo. 467, 215 S.W.2d 474; Hudson v. Jones, Mo.App., 278 S.W. 2d 799.

Finally, relator urges that the trial court has no jurisdiction of Cause No. 210,148 for the reason that the divorce court, in which the care and custody of Roberta was adjudicated, has sole and exclusive jurisdiction over the person of Roberta and of the question of her support and maintenance under § 452.070 RSMo 1949, V.A.M.S., which provides that when a divorce is adjudged the divorce court "shall make such order touching the * * * maintenance of the children * * as * * * shall be reasonable, * * *." It is urged that the statute does not limit the power of the court to "minor" children but uses the word "children" in its general sense. The Supreme Court in Kelly v. Kelly, 329 Mo. 992, 47 S.W.2d 762, 81 A.L.R. 875, held that the power of a divorce court to make orders touching the maintenance of children ceases with the minority of the children. See Annotation 162 A.L.R. 1084. The power of the divorce court to award maintenance for children is granted and regulated by statute. The statutes make no provision for maintenance of adult incapacitated children and the courts cannot write such a provision in the statute.

For the reasons given our preliminary writ of prohibition should be quashed insofar as respondent's right to proceed with the cause is concerned and made absolute insofar as respondent's right to enforce items 1 and 2 of the subpoena duces tecum is concerned. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

Our preliminary writ of prohibition, accordingly, is quashed insofar as respondent's right to proceed with the cause is concerned and our preliminary writ is made absolute insofar as respondent's right to enforce items 1 and 2 of the subpoena duces tecum is concerned.

MATTHES, Acting P. J., ANDERSON, J., and CLEMENS, Special Judge, concur.