Dear Senator Welliver:
This letter is in response to your request for a ruling on the following question:
 "Are patients who now reside in homes for the mentally retarded, but whose parents do not reside in Missouri, residents of Missouri for the purpose of receiving benefits from the Department of Mental Health?"
In your request, you have presented the following hypothetical cases to illustrate your question:
 "Case #1 — The patient was placed in the home for retarded children by his parents for long-term care and will probably be in the home for the rest of his life. The parents do not live in the State of Missouri. The patient is over 21 years old and has lived at the home for more than a year. No guardianship has been established.
 "Case #2 — The patient was placed in the home for the mentally retarded by a Department of Mental Health from another state. Because of the program available at the home for the mentally retarded, it is expected that the patient will stay in the home for the rest of his life. However, the other state will not pay for his care and treatment past the age of 21, because it claims that the patient then becomes a resident of Missouri. The patient is now 21 years old and has been in the home since he was 17. No guardianship has been established.
 "Case #3 — A parent who lives out of the state has established guardianship for his son on the basis of incompetency. The parent placed the son at the home for the mentally retarded and expected him to spend most of his life there. The parent lives out of the State of Missouri. The son has lived at the home for the mentally retarded for five years and is now 33 years old."
In responding to your question, we do not attempt to determine the obligations of this state or other member states under the Interstate Compact on Mental Health, Sections 202.880 RSMo et. seq., because such determinations should be made in conjunction with the member state in the context of the particular fact situations.
The question presented in the opinion request, and the accompanying hypotheticals assume that the receipt by the patients of benefits from the Missouri Department of Mental Health turns on the question of whether the patients are residents of Missouri. However, it is necessary to consider factors other than residency in answering your question.
The Department of Mental Health is charged by statute with paying the costs of care and treatment only for individuals who are patients of the Department. Section 202.863 RSMo 1977 Supp. reads in part:
 "1. Patients admitted to the facilities for the mentally ill or retarded of the department of mental health under the provisions of this law shall be classified as private or state patients . . .
* * *
 "3. If any person is admitted to a state facility who is unable to pay for care and treatment, as determined by the application of the standard means test pursuant to the provisions of section 202.330, the cost of said care and treatment shall be paid for out of funds appropriated to the department of mental health." (emphasis added).
If patients in the hypotheticals are not patients of the Department of Mental Health, they would not be eligible for departmental benefits.
There are several ways under statute in which an individual may seek to become a patient of the Department of Mental Health. For example, admission may be obtained through medical certification (Section 202.601 RSMo 1969), as a voluntary patient (Section 202.783 (RSMo 1969), by order of a probate court (Section 202.807 RSMo Supp. 1975), by order of a juvenile court (Section 211.201), or by various emergency procedures (Sections 202.800, 202.803, 202.805 RSMo 1969). In H.C.S.S.B. 651, which repeals many of the sections just cited, effective, January 2, 1979, similar procedures are specified for becoming a patient of the Department of Mental Health. See, e.g., Section 202.187, providing for voluntary admissions of mentally retarded and developmentally disabled persons to private and public facilities. Through one of these procedures, an individual may obtain the status of a patient of the Department of Mental Health without being a resident of Missouri.
The statute does not provide that an individual may become a department patient simply by being hospitalized in an institution situated within Missouri. Rather, an individual can become a patient of the department by one of the means provided in the statutes. It does not appear from the hypotheticals that these patients are departmental patients; therefore, absent acquisition of that status, departmental benefits would not be available to them.
If the individuals in the hypotheticals are accepted as patients by the department, they do not qualify automatically for the free receipt of department benefits or for unconditional payment by the department of all or part of the cost of their care and treatment. Rather, one must look to the statutes governing the department and case law interpreting those statutes to determine which parties are responsible for the costs. Contrary to the assumption implicit in the opinion question and hypotheticals, resolution of this question does not turn on the residency of the parties involved.
The law is clear that the department is to look first to the patient's estate for payment of costs. Section 202.240, RSMo 1977 Supp., reads in part:
 "If any person be admitted to a facility of the department who has an estate or if while a patient of any such facility shall become possessed of such an estate, such patient or his guardian shall pay for his support and expenses at the facility as determined by the application of the standard means test pursuant to the provisions of section 303.330 out of the patient's estate; and if such person shall at any time become indigent, he shall be supported and maintained at the facility by the funds appropriated to the department of mental health." (emphasis added).
See also Section 202.831 RSMo Supp. 1975 which provides that those responsible by law for the payment of patient costs remain responsible in nursing home and related placements.
Indigency rather than residency is the criterion for payment of patient costs by the department. These sections do not exempt the estates of non-resident patients from liability for these costs but instead mandate that any
person admitted to a department facility and having the resources shall be responsible for the costs of his treatment and care.
In each of the hypotheticals, the patient is an adult. It is not clear whether or not the patient has an estate available to pay costs accrued in receiving department care, assuming that the individuals in each case are accepted as patients by the department. If an estate is not available, or the estate is exhausted, the department may properly look to the parents of the patient for payment of costs.
The Missouri Supreme Court has endorsed the principle of parental responsibility for the costs of supporting an adult child in certain circumstances. In the case ofFower v. Fower Estate, 448 S.W.2d 585 (Mo. 1970) the court held that a parent has a duty during his lifetime to support his adult unemancipated, unmarried and needy child who since some time during minority has been totally disabled. See also, State ex rel. Kramer v. Carroll, 309 S.W.2d 654
(Mo.App. 1958). The patients in the hypotheticals appear to fit the criteria for continued parental responsibility into the child's majority. For example, hypotheticals one and three state that the patients are expected to be institutionalized most of their lives, an apparent recognition of serious disability.
If the responsible party does not pay for the costs of treatment and care, the patient may be discharged when payment is not forthcoming. The superintendent of the facility
 "[M]ay return the patient to the sheriff of the county or municipality or to the guardian, trustee or person responsible for the payment of the installment, and at the expense of the county, municipality, guardian, trustee or person." Section 31.050
RSMo 1969.
This section, like the others discussed in this opinion, does not exempt from its coverage non-residents who are patients of the department.
Specific authority is also given to the department to transfer to the state of residency non-residents committed by a court order to the department, assuming the making of "proper arrangements" for the transfer with the state of residency, § 202.875 RSMo 1969.
As the above discussion indicates, the department is responsible for the payment of the costs of care and treatment of the patients under discussion only if, (a) the individual is a patient of the department, (b) the individual is indigent, and (c) the parents are indigent.
Under the principles discussed above, the individuals in hypotheticals one and three are not eligible for benefits from the Department of Mental Health. The facts presented do not indicate that they are currently patients of the Department. Such a status is a prerequisite to the assumption by the Department of costs, and mere confinement in a private institution located in Missouri does not make one a patient of the department. In addition, simply becoming a patient of the department does not entitle one to receive free services of the department, because the estate of the patient and the patient's parents remain liable, unless they are indigent. Finally, it is to be noted that the estates of those individuals who receive aid from the Department of Mental Health are liable for this debt. § 473.398 RSMo 1977 Supp. It is clear from this discussion that the legislature intends for the Department to expend its own funds for the costs of caring for its patients only when no other alternative source of payment is available.
In the second hypothetical, the mental health agency of another state placed the patient in the private facility in Missouri. Such a placement imposes no obligation upon the Missouri Department of Mental Health. The other state remains responsible for payment of the cost of care and treatment. The fact that the individual has turned 21 years of age is irrelevant in this situation. Disputes concerning the status of such patients should be resolved, if possible, through use of the Interstate Compact on Mental Health.
Sincerely,
 JOHN ASHCROFT Attorney General