GEORGE S. MAY COMPANY, Appellant,

v.

STEPHENS LUMBER COMPANY, Appellee.

No. 15788.

Court of Civil Appeals of Texas.

Fort Worth.

March 29, 1957.

Rehearing Denied April 26, 1957.

Nelson, Montgomery, Robertson & Sellers and Lee Sellers, Wichita Falls, for appellant.

Anderson, Latham & Castledine and Steve Latham, Wichita Falls, for appellee.

MASSEY, Chief Justice.

On March 1, 1957, we entered judgment affirming the judgment of the trial court. After further study of the case on motion for rehearing, we have come to the conclusion that we were in error in so doing. The former opinion is hereby withdrawn and the following substituted therefor.

From a judgment for the defendant in a suit by plaintiff for damages growing out of a breach of contract by defendant, the plaintiff appeals. The plaintiff's suit was based upon a contract for personal services. Attorney's fee was sought in addition to actual damages. The defendant resisted the suit, claiming actionable fraud in the contract's inception.

■ Essentially, defendant sought to show that the contract was executory and should not be enforced against it in view of the fraud. Of course, where the fraud is established in such a case, a court will refuse to lend its aid to further the fraudulent design.

The George S. May Company is a partnership, with George S. May as its managing partner, operating out of Chicago, Illinois. Its business is that of "business engineering", i. e., it services various and sundry commercial establishments in the conduct of investigations into their conditions and systems of doing business, and recommends ways and means to increase profits and to cut losses. Of course, the May Company is in business for profit, and makes a substantial charge for such services.

The Stephens Lumber Company is a partnership, consisting of Gene Stephens and two others, operating out of Wichita Falls, Texas. This company responded to literature it received from the May Company and in June, 1954, authorized the May Company to conduct a preliminary survey of its business, at an agreed price of $100, to determine whether it needed a more exhaustive service by the May Company.

The preliminary survey was made of the Stephens Company and on the basis of the survey man's recommendations, it agreed to enter into negotiations with the May Company for further and more exhaustive engineering services. The agreement was reduced to writing and authorized the May Company to assign an Engineering Staff to begin the "installation development" of its business, to begin on June 28, 1954. The "estimated number of hours" to be entailed was 150, but no reference was made in the instrument as to the price to be charged therefor. The following words appear on the instrument, however, "This authorization to start installation development work under the conditions stated in our Installation Development and Method of Payment Procedures—Form 56, may not be cancelled between this date and the scheduled starting date noted above." It appears that Stephens Company was never presented with Form 56 until the scheduled starting date, which was on the Monday following.

On the scheduled starting date the Form 56, mentioned above, was executed by O. G. Stephens for the Stephens Company, and by S. A. Heinze for the May Company. It amounted to a contract between the parties. It provided that it embodied the entire agreement between the parties and that "no understandings or agreements, verbal or otherwise, in relation thereto, exist between the parties except as herein expressly set forth." It provided that the Stephens Company could "terminate the serv-

ices of the George S. May Company Business Engineering Staff at any time, by declaration of such intent made to the Supervising Engineer when he is on the client's premises, at the same time presenting the Supervising Engineer with a check for all fees due up to the time of termination." The identity of the "Supervising Engineer" (of the Engineering Staff) was not stated in the form, but the evidence establishes without dispute that S. A. Heinze was that person. The contract further provided that the May Company was to be paid on the basis of $20 per man hour worked by each individual member of its staff.

Form 56, as executed, further provided that the Stephens Company would, "through the medium of discussions, recommendations, and progress reports", be kept informed of the progress of the May Company's Engineering Staff,—that "in order that the continuation of the services of the George S. May Company is at all times within client's control, acceptance or rejection of all, or any part, of matters covered in discussions or recommendations * * * shall be by client's signature to Progress Reports"—with the Stephens Company to specify thereon any statement, etc., not approved.

It is apparent from the contract executed by the parties that the May Company warranted nothing as to any result to be obtained or as to the value of the work to be performed, while the Stephens Company bound itself to a continuing contract to pay the May Company $20 per man hour worked by each individual until such time as the Stephens Company ended the contract by paying all fees accrued up to that time. Furthermore, Stephens Company could do this only by making its tender to Mr. S. A. Heinze—and this done at a time when Heinze was to be found on the Stephens Company premises.

The members of the Engineering Staff of the May Company were on the Stephens Company premises, presumably at work, for approximately one week, a total of 116 man hours, when Mr. Heinze presented the Stephens Company with a statement in the amount of $2,320, based upon work represented as performed. Stephens Company tendered Mr. Heinze, for the May Company, a check in the sum of $1,500 "on account", and this was accepted by Heinze and forwarded to the May Company in Chicago. By this time two instruments, a "recommendation" and a "progress report" had been submitted to the Stephens Company.

At about this time, the partners in the Stephens Company were growing somewhat concerned with the expense accruing pursuant to the contract with the May Company, and there was some dissatisfaction with what might be termed "buck passing" by Mr. Heinze in connection with certain assurances they desired to receive, not the least of which was the desire to be assured that the May Company's work would not run substantially in excess of 150 man hours, as per the previous estimate. Over the weekend the partners became aware of a certain article appearing in the June, 1954 issue of Fortune Magazine, entitled, " 'The Relentless George S. May Company' ", which article raised considerable doubt in their minds concerning their wisdom in having entered into the contract. They proceeded to "stop payment" of the $1,500 check theretofore delivered to Mr. Heinze, and formulated the intention to terminate the contract.

However, without explanation aforehand, Mr. Heinze was not to be found on the Stephens Company premises the Monday or Tuesday following. When he appeared the following Wednesday and the partners of the Stephens Company attempted to serve notice of termination they were referred to the contract (Form 56) and its provisions relative to termination. They were informed that the cost of termination as of that time was the sum of $2,860, which must

be paid in cash, or the contract would be considered as continuing. This the partners refused to pay, thereafter refusing to pay for the additional time the May Company employees remained on the premises, or to approve or sign any further reports tendered.

Thereafter, the suit of the May Company was filed. Answer was made, the issues were joined, and trial was to a jury.

In the court's charge to the jury certain groupings or sets of special issues were submitted and answered by the jury, the effect of the findings amounting to the following: (a) *May Company's agent represented* to Stephens Company that the project would require an estimated 150 man hours of work, *konwing at the time he made the representation that the May Company did not intend to perform the contract within such estimated period,* as part of a plan or scheme of the May Company to defraud Stephens Company of $4,260; that such representation was made to induce the Stephens Company to sign the contract (Form 56) in question, and the latter company did execute the contract in reliance upon such representation, which it would not have done but for such representation. (b) In the contract in question the *May Company promised* to keep Stephens Company informed as to the progress of the engagement through the medium of discussion, recommendations and progress reports, *knowing at the time the promise was made that it did not intend to keep the Stephens Company so informed,* and in fact May Company did not thereafter keep Stephens Company so informed throughout the period of the engagement in question, as part of a plan or scheme of the May Company to defraud Stephens Company of $4,260; that such promise was made to induce the Stephens Company to sign the contract (Form 56) in question, and the latter company did execute the same to its detriment in reliance upon such promise, which it would not have done but for such promise. (Emphasis supplied.)

The May Company complained of the set of issues we have set forth under (a), and in particular the question and answer by which it was established that its agent's representation to Stephens Company was made with the knowledge on the part of the agent that May Company did not intend to perform the contract within such estimated period. The particular question was worded as follow: "Do you find, from a preponderance of the evidence, that plaintiff's agent Crofton knew, at the time such representation was made, if it was made, that the plaintiff George S. May Company did not intend to perform the contract in question within an estimated 150 man hours of work?"

By objection made to the court's charge, May Company pointed out that such issue was improper in that it asked about knowledge on the part of the agent Crofton of May Company's intent and assumes that May Company intended not to perform the contract within the 150 man hours estimated by the agent without any finding as to May Company's intent. It is urged that the special issue and the finding thereto made would not be ultimate as applied to the case, and that furthermore it was upon the weight of the evidence in that it assumed the existence of a controverted fact. We are of the opinion that May Company is correct and that the trial court erred in giving the issue. Johnson v. Zurich General Accident & Liability Ins. Co., 1947, 146 Tex. 232, 205 S.W.2d 353; Fort Worth & Denver Ry. Co. v. Barlow, Tex.Civ.App., Fort Worth, 1953, 263 S.W.2d 278, writ refused, n. r. e.

The May Company made similar complaint of the set of issues we have set forth under (b), and in particular the question which was a part thereof worded as follows: "Do you find from a preponderance of the evidence that the plaintiff George S. May Company knew, at the time such promise (to keep Stephens Company informed of progress through medium of discussion, recommendations, etc.) was made,

if it was made, that the plaintiff did not intend to keep the defendant so informed?"

May Company contends that it correctly pointed out in its objection to the issue that the same assumed the falsity of its promise, a disputed issue in the case. We have concluded that May Company is correct, and that the error is such as would inhibit the support of the judgment because of fraud in connection with the representation in question. The ground of defense consisted of several issues, several of which were not complained of in May Company's objections to the charge, and fewer still complained of on the appeal. However, Texas Rules of Civil Procedure, rule 279 cannot preserve the ground for the support of the judgment upon the theory of "presumed findings", for the Rule's provision therefor must logically rest upon the theory that there has been a waiver of jury trial in respect to the particular issues, while here May Company's objection to the issue quoted attacks the very heart of a finding Stephens Company must have to support its judgment. See the article by Judge J. B. Dooley in 20 T.L.R. 39–43, as copied in the "Commentaries" at page 226 of Vernon's Annotated Texas Rules, 1955 Edition.

We know that the promise of May Company to keep the Stephens Company informed was not kept. If May Company's representation that it would keep the Stephens Company informed was falsely made it would follow as a matter of course that the party making the representation knew it did not intend to keep the promise. Furthermore, if a promisor—knowing it did not intend to perform—nevertheless made the promise, it would follow that the representation (in the form of a promise) was falsely made.

But May Company, as the losing party, was entitled to know from an answer returned by the jury as a finding of fact that its promise in the respect inquired about was falsely made, and that such constituted

the basis of the judgment rendered against it. Such right was preserved when it made the objection. In the present instance we have little doubt but that the jury would have found that the promise was false if it had been asked to do so by a special issue properly framed. But it was not asked to make the finding. Instead, through the issue submitted over the objection of counsel, the jury was asked whether May Company "knew" it was making a false promise. By the question asked we are of the opinion, as applied to the instant case, that the submission of the issue with complete absence of any inquiry as to whether the promise was falsely made amounts to a comment on the evidence, and constitutes a charge on the weight of the evidence in that it assumes that May Company's promise was false when the truth or falsity of its promise was a disputed issue in the case.

Speer's Law of Special Issues in Texas, p. 254, "Form and Construction of Issues," sec. 195, "Assuming material facts," reads in part as follows: "Another vice in the form of issues submitted * * * is that of assuming the existence of another controverted fact material in the inquiry. Every material fact which is controverted in the evidence requires a jury finding and the court has no more authority to assume its truth upon the submission than he has to make an express finding thereon." We believe the language quoted expresses law applicable to the situation here.

We recognize certain difficulties confronting us in correctly disposing of the question, primarily because of distinctions to be made between future performance promises as representations—and representations of the kind ordinarily considered in fraud cases. We have found no case directly in point, but persuasive and informative cases in which contracts were sought to be avoided on the ground of fraud are: Gulf, C. & S. F. Ry. Co. v. Houston, Tex.Civ.App., Austin, 1931, 45

S.W.2d 771; C. V. Hill & Co. v. Fricke, Tex.Civ.App., Fort Worth, 1939, 135 S.W. 2d 582, writ dismissed, correct judgment; and Crow v. Monroe, Tex.Civ.App., Waco, 1925, 273 S.W. 886.

The two points of error sustained inhibit all the jury findings which exist in support of Stephens Company's judgment.

Other points presented by the May Company embrace contentions that there was no evidence to support the findings made by the jury in support of Stephens Company's theory, improperly admitted testimony, and erroneously excluded testimony. We have carefully tested the points of error predicated thereupon, and concluded that they should be overruled. In the main, and in view of the necessity of another trial, the matters complained of by May Company will probably not again become material. In the previous trial, the entire article from Fortune Magazine was admitted in evidence. Reversible error was not shown because thereof under the state of the record. Our holding would not necessarily be the same under a different record.

Stephens Company has advanced by cross-assignment an error to be considered in view of our remand of the case. It contends that the trial court erred in refusing to require Mr. George S. May (whose deposition was taken at a point outside the state) to reply to a written interrogatory requesting the names of the individuals, companies and corporations in Wichita County, Texas, for whom the May Company had performed engineering surveys since January 1, 1952. Mr. May, the head of the May Company, had answered the interrogatory as follows: "Our relationship with clients is of such confidential nature that without express permission we do not disclose names of clients."

Stephens Company contends that the trial court should have ordered Mr. May to answer the interrogatory, subject to depriving the May Company of a trial until the answer was returned, somewhat similar to what was done in the case of Saenz v. Sanders, Tex.Civ.App., San Antonio, 1951, 241 S.W.2d 316. But we do not deem that case to constitute authority for us to act as Stephens Company wishes, and accordingly to order the trial court to delay any further trial until it has issued an order requiring Mr. May to answer the interrogatory—and, in the event of his refusal, to "close the Court House doors" to May Company during his persistence.

■ In the first place we do not, in the state of the record, consider that our jurisdiction in the premises is invoked upon the appeal. In the second place it would seem that the matter is one for the exercise of discretion by the trial court, absent any abuse of which reversible error would not appear. Stephens Company does not assert that the trial court's discretion has been abused, and does not demonstrate any harm as having been done to it upon the trial from which the appeal was taken. Stephens Company introduced its question and the answer Mr. May returned, thus showing the suppression of evidence available to the May Company. We are entitled to presume that full advantage thereof was taken during the course of jury argument. See 17 Tex.Jur., p. 425, "Evidence—Civil Cases", sec. 155, "Suppression of Evidence and Excuses Therefor". The point of error is overruled.

Judgment is reversed and the cause remanded for another trial.