**SKELLY OIL COMPANY, Appellant,**

v.

**MEDICAL & SURGICAL CLINIC, Appellee.**

**No. 288.**

*Court of Civil Appeals of Texas.*

Tyler.

July 13, 1967.

Rehearing Denied Sept. 21, 1967.

---

Ramey, Brelsford, Flock & Devereux, Tracy Crawford and Michael A. Hatchell, Tyler, for appellant.

Marcus Vascocu, Longview, for appellee.

MOORE, Justice.

Plaintiff, Medical & Surgical Clinic, a medical partnership, brought this suit against defendants, Skelly Oil Company and Willard Rumfield, Jr., to recover various medical and surgical fees for services rendered Rumfield, a customer of Skelly, who was injured as a result of an explosion occurring at the gasoline loading docks on Skelly's premises.

As grounds for a cause of action, plaintiff alleged that immediately after the explosion, defendant Skelly, acting through its servants, agents and employees, called the Medical & Surgical Clinic and requested Dr. George Tate and Dr. Edwin Buckner to go to the Good Shepherd Hospital in Longview, Texas, and treat and care for Rumfield; that as a result of such request, Dr. Buckner and other doctors were dispatched from the Clinic and thereafter treated Rumfield for a period of approximately two months; that the usual and customary charges for such services amounted to the sum of $820.00; and although demand had been made for payment, the defendants and each of them refused to pay the same or any part thereof. Plaintiff prayed for recovery of the debt, together with a reasonable attorney's fee. Defendant, Skelly Oil Company, denied liability generally and specially denied that the company either expressly or impliedly agreed to assume liability for Rumfield's treatment. Defendant Rumfield failed to answer and judgment by default was rendered against him.

Trial was before the jury and in response to the special issues submitted by the court, the jury found (1) that the defendant, Skelly Oil Company, through its office manager, John A. Pate, requested Dr. E. E. Buckner and/or Dr. George Tate to treat and care for Rumfield, and (2) that the Medical & Surgical Clinic performed medical services for Rumfield at the special instance and request of Skelly. It was agreed and stipulated that the services rendered on behalf of Rumfield by Medical & Surgical Clinic were necessary and reasonable and that the value of the services amounted to the sum of $820.00 and that the sum of $300.00 would represent a reasonable attorney's fee.

Based upon the verdict and stipulations, the trial court rendered judgment for the plaintiff in the amount of the debt and for attorney's fee. Defendant, Skelly Oil Company, after its motion for new trial was overruled, duly perfected this appeal.

By its first point of error, Skelly asserts that as a matter of law, the judgment must be reversed and rendered in its favor because there is no evidence that Skelly expressly or impliedly agreed to pay for the medical services rendered Rumfield. In this connection Skelly argues that even though it be conceded that there was evidence of probative force to sustain the finding that Skelly requested medical services for Rumfield, the relationship between Skelly and Rumfield was not such as would impose a legal obligation upon Skelly to furnish medical care, and therefore a mere request to furnish medical care would not raise the issue of an implied promise on the part of Skelly to pay for the services. Consequently, Skelly asserts that since there was no evidence of a promise to pay for the service and the law implies no obligation to pay for medical service requested for a stranger, the court erred in refusing to grant its motion for instructed verdict and in refusing its motion for judgment notwithstanding the verdict.

These points will require a brief statement of the evidence. When viewed in a light most favorable to the plaintiff, the record reveals that Willard Rumfield was employed by a company known as Power-Pak. He had gone upon Skelly's premises for the purpose of purchasing gasoline for his employer and during the process of loading the same on the truck, there was an explosion and fire which seriously injured him. There is no evidence as to what caused the explosion. Immediately thereafter, an ambulance was dispatched to the Skelly plant and Rumfield was carried to the hospital.

Shortly thereafter, the receptionist at the Medical & Surgical Clinic received a telephone call from a person whom she identified as John Pate, defendant's office manager, who, according to her testimony, advised her that there had been an explosion at the Skelly plant. He then asked: "Can you take care of a patient for us?" According to her testimony, Pate also specifically requested the services of Dr. Buckner and Dr. Tate. She testified that she relayed the message to Dr. Buckner, who immediately left his office and proceeded to the hospital and commenced treating Rumfield. John Pate denied making such a call. Other employees testified that they did not call the Clinic on the occasion in question.

The evidence further shows that for many years prior to the time of explosion, Skelly had used the Medical & Surgical Clinic to treat its employees and to make pre-employment physical examinations for those seeking employment with defendant. Dr. Buckner testified that at one time there existed a written contract between Skelly and the Clinic, but that he was unable to locate the same at the time of trial. The evidence shows that the usual custom was for the office manager of Skelly to call the Clinic prior to sending a patient and make arrangements. After the services had been requested, the Clinic would bill Skelly for its services, and same would be paid by Skelly.

The evidence further shows that immediately after Rumfield had been confined in the hospital, Mr. Pate and Mr. Miller, the plant manager, visited the hospital to check on Rumfield's condition and while there they saw Dr. Buckner and other doctors from the Clinic treating Rumfield. Pate and Miller also visited the hospital on subsequent occasions to check on Rumfield's condition and contacted the doctors with reference to his progress. At no time during the visits to the hospital was there any conversation between the doctors and the employees of Skelly as to who was responsible for the medical bills until a few days prior to Rumfield's discharge, at which time Mr.

Miller saw Dr. Buckner at the hospital and advised him that Skelly would not be responsible for the bill. Dr. Buckner testified that this was the first time he had an indication that Skelly was denying responsibility for the medical services. He further testified the Clinic continued to look to both Skelly and Rumfield for payment and when both refused, the Clinic filed this suit.

■ Although there are no Texas cases on the point, the authorities generally support the broad proposition that a mere request by a person to a physician or surgeon to render services to another to whom the person making the request bears no relationship as would ordinarily impose a legal obligation to furnish medical care will not raise an implied promise on the part of the one requesting the services to pay the physician or surgeon. Public policy favors the encouragement of those who will summon aid for the unfortunate sick who cannot act for themselves. 41 Am.Jur. 257, Sec. 144; 125 A.L.R. 1431.

■ On the other hand, in 70 C.J.S. Physicians and Surgeons § 70, at page 1030, we find the rule stated thusly:

"* * * Where the physician is aware that one requesting his services for a third person is acting solely as a messenger for the latter, he cannot recover against the messenger; but, where there is nothing to indicate to the physician that the person calling him is acting as a messenger, and the circumstances raise a reasonable inference that such person intends to pay, the physician may recover, * * *"

■ According to defendant's interpretation of the evidence, the facts show a mere request for medical aid and nothing more. Based upon this premise, Skelly takes the position that even though it be conceded that it requested the services, such finding, standing alone, would not be sufficient to establish a cause of action upon an implied contract and there being no evidence of an express contract, the trial court should have

directed a verdict in its favor. As we view the record, the evidence presents something more than a mere request. In our view, the facts and circumstances were such that the plaintiff could have been led to believe, and to charge Skelly with knowledge that the plaintiff did believe, that Skelly was undertaking to pay for the services rendered. When viewed in a light most favorable to the plaintiff, we think there is at least some evidence of probative force tending to prove a condition of affairs from which the triers of the fact, if they should see fit to draw the inference, might with reason conclude that Skelly intended the plaintiff to understand, and the plaintiff did understand, that Skelly intended to assume the responsibility for the payment of the services. Morrell v. Lawrence, 203 Mo. 363, 101 S.W. 571. In view of the previous relationship between Skelly and the Clinic, and the evidence showing Skelly requested the Clinic to take care of a patient for "us," we think there was sufficient evidence to create a fact issue for the jury upon whether or not the facts and circumstances showed an implied contract. Ghio v. Schaper Bros. Mercantile Co., 180 Mo.App. 686, 163 S.W. 551; Valentine v. Morgan, 207 Iowa 232, 222 N.W. 412; Andrew v. Brecker, 229 Wis. 526, 282 N.W. 609. We therefore overrule defendant's first and second points of error.

In the third and fourth points, defendant contends that the court erred in submitting Special Issues Nos. 1 and 2 and in basing judgment for the plaintiff thereon, because such issues are only evidentiary issues and not controlling issues, and therefore the findings thereon will not support a judgment in favor of the plaintiff. Defendant does not challenge the jury's verdict finding that the employees of the defendant requested the service, but under these points contends first that even though it be conceded that a request was made, plaintiff waived its right to a recovery by failing to request additional findings upon the question of whether or not the facts and circumstances showed an implied contract. For this rea-

son defendant asserts that the judgment should either be reversed and rendered in its favor or remanded for another trial.

■ As we interpret the provisions of Rule 279, Texas Rules of Civil Procedure, it provides that if a ground of recovery or of defense is wholly ignored or neglected, and no issue is submitted or requested thereon, it will be held to have been waived and no recovery or defense can be based thereon. If, however, the grounds of recovery or defense consists of more than one element— that is, requires more than one issue to submit them—and the court submits some of the elements and omits others and there is no objection to the failure to submit the same, the parties will be placed in the position of having agreed to waive a jury trial on the unsubmitted elements and to have submitted them to the court for his determination. See Comments to Rule 279, Vernon's Ann.Tex.Rules, page 8.

■ We think it obvious from the pleadings and the evidence that the ultimate issue or theory of recovery was whether or not there was an implied contract. The ultimate issue of whether or not there was an implied contract consists of several component elements, to-wit: (1) whether Skelly requested the services; (2) whether or not the employees of Skelly had real or apparent authority to request the medical services for Rumfield; and (3) whether or not the request, when considered in the light of all the surrounding circumstances, was such as to cause the plaintiff to reasonably believe that Skelly intended to pay for the services, thereby establishing an implied contract. Neither of the foregoing elements, going to make up the ultimate issue, constitutes an independent ground of recovery. Each is but a component part of the ultimate issue and as such was complimentary in nature. Since one of the elements of plaintiff's theory of recovery was submitted, we have concluded that plaintiff did not waive its right of recovery in failing to request additional elements of the ultimate issue.

Secondly, defendant contends that the verdict, finding only that defendant requested the service, will not support the judgment. In this connection, defendant argues that because of its objection to the court's charge, the trial court was not authorized to make findings on omitted issues and therefore, since no issues were submitted to the jury upon the question of implied contract, the judgment cannot be sustained upon presumed findings, and as a result the judgment must be reversed and remanded. We sustain this contention. The record shows that defendant properly objected to the charge on the ground that it failed to submit any issue upon the question of whether or not the defendant impliedly agreed to pay for the medical services. It is only in instances where there are no objections to the charge that all issues not requested or submitted are deemed to have been found in such a manner as to support the judgment. Rule 279, supra. In view of the objections pointing out the omission of some issues necessary to the plaintiff's ground of recovery, the judgment cannot be preserved upon the theory of presumed findings. Defendant did not waive a jury trial upon the omitted issues and therefore the trial court was not authorized to supply the finding that an implied contract existed and enter judgment thereon. George S. May Company v. Stephens Lumber Company, (Tex.Civ.App.) 301 S.W.2d 294. Without such presumed findings, the verdict will not support the judgment and therefore it cannot stand.

In view of the ruling hereinabove made, it will not be necessary to discuss the remaining points asserting that the court erred in failing to submit the question of whether the employees of Skelly had real or apparent authority to bind the company for medical services for Rumfield.

For the reasons stated, the judgment is reversed and the cause remanded for another trial.