Charles **WASHINGTON, Individually, etc.,**
Appellant,

v.

Charles B. **GRIFFIN, Appellee.**

No. 15257.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

March 14, 1968.

Rehearing Denied April 25, 1968.

John H. Holloway, Houston, for appellant.

Alice Giessel, Houston, Talbert, Giessel, Barnett & Stone, Houston, of counsel, for appellee.

BELL, Chief Justice.

Charles Washington, the father of Shelia Ruth Washington, acting individually and as next friend of his minor daughter, sued appellee to recover damages resulting from a collision between the daughter and an automobile belonging to and driven by appellee. The accident occurred November 3, 1963, at which time the minor was four years of age. The jury acquitted appellee of all acts of negligence; found appellee was faced with an emergency; that he being faced with an emergency acted as a person of ordinary prudence in the exercise of ordinary care would have acted; and, that such emergency was not the sole proximate cause of the collision. The jury found that no damages had resulted to either plaintiff. On the verdict the court rendered judgment that appellant take nothing.

The jury did not find from a preponderance of the evidence that appellee failed to timely apply the brakes; nor that he failed to keep a proper lookout; nor that he was driving at an unsafe speed, nor was such negligence; nor that he failed to sound the horn, nor was such negligence; nor that he failed to turn his vehicle to the left, nor was

such negligence. It also failed to find from a preponderance of the evidence that any of such acts inquired about was a proximate cause of the collision.

It is noted that all issues were answered because, apart from those on emergency, they were all submitted unconditionally. Appellant asserts forty points of error.

The first thirty points encompass the assertions with regard to each issue, except on emergency and damages, that there was no evidence to support the jury's answers and that such answers are contrary to the overwhelming weight and preponderance of the evidence.

We must review the evidence. As to the no evidence points we review it in the light of the rule that we must look at that evidence which is most favorable to the verdict and if from it we conclude a reasonable mind could reach the conclusion as to the existence of the ultimate facts the jury did, then there is evidence of probative force to support the answers. In determining whether the answers are contrary to the overwhelming weight and preponderance of the evidence, we consider that which is favorable to the answers and that which militates against them. We may not reverse unless we can say that the answers are so against the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

The accident occurred on Paul Quinn Street in Houston in the early afternoon. Appellee was driving his 1954 Chevrolet automobile in a westerly direction. He had been driving north on Cebra which was the street just east of the block on Paul Quinn where the collision occurred. Appellee was familiar with the street and neighborhood as he lived about five blocks from the scene of the accident. Paul Quinn Street is paved with asphalt which furnishes two lanes for vehicular travel. On each side of the asphalt is a relatively smooth dirt shoulder. Its width is not shown. The brakes on his car were good.

He had stopped at a stop sign at Cebra and Paul Quinn and then turned left on Paul Quinn. When he got on Paul Quinn Street he saw an ice cream truck stopped on the north side of the street with the right two wheels off on the north shoulder. It was about half a block west of Cebra, which would be a distance of about 150 feet. As he was passing the truck he was about four feet to the left of it. The child ran from in front of the truck and into the side of his car at the front door. She was about three feet in front of the truck when she ran out into his car. When he saw the truck as he turned off of Cebra, he did not know there would be small children at the truck. There was another car parked back of the truck with an adult couple in it. It was about a car length back of the truck. It was parked like the truck, that is, partly on the shoulder. He knew children are sometimes at ice cream trucks but not always. At one point appellee testified when he passed the truck he was traveling between 15 and 20 miles an hour. He then immediately stated that just before he got to the truck he slowed to a slower speed to pass the truck. He slowed down just before he got to the car parked behind the truck. He raised his foot off the accelerator. The car was a gear-shift one. He then said he would estimate he was traveling between 10 and 15 miles per hour This was a rough guess. When he got to the rear of the truck he didn't know the exact speed he was going because he was looking to see what was happening in front of him, but he was going less than 15 miles an hour. He did not notice any children at the truck—only adults. He had an idea there were some children. When he reached the rear of the truck and was passing it he estimated he was actually going less than 10 miles an hour. He could stop in about four feet. He first saw the child when she ran from the front of the truck from north to south. The front of his car at that time was just past the front of the truck and he hit his brakes. She did not fall down when she hit the front door. The front of his car

stopped about six feet in front of the truck. The tail end of the car was almost even with the truck when he stopped. He had seen no one in front of the truck.

Appellee testified he first began slowing down when he was passing the parked car and he put his foot on the clutch preparing to stop. He did not then have his foot on the brake. He didn't put the brakes on until he saw the child running toward him. He didn't stop until he saw her. As soon as he saw her, however, he did apply the brakes. He could not see her when she was in front of the ice cream truck.

Appellant's counsel asked appellee if he blew the horn when he "passed the two vehicles". The witness in reply to this question said he didn't blow the horn. He then said he didn't remember whether he blew the horn when he passed the truck. He used the expression in one place that he "wouldn't remember—naturally I wouldn't."

Mary Washington, the aunt of the injured child, was sixteen years old when she testified. She was twelve years old when she witnessed the accident. She was standing at the gate across the street. She said there were about seven children around the area when the truck stopped. She said she did not think there were any children standing either in front of or behind the truck when she first saw appellee's car. She stated Shelia ran from in front of the ice cream truck and in front of appellee's car and the left side of appellee's car hit her. The left fender hit Shelia and knocked her ten or fifteen feet. Shelia got up and ran to the witness and the witness sent her home. Though Mary doesn't drive an automobile, she stated appellee was driving 20 or 25 miles per hour when Shelia was hit. She never saw the car dip down in front or hear him apply the brakes. She did not hear appellee blow the horn. She did not know if he turned his car or not. She said no car was parked behind the truck. Appellee's car was up along the side of the truck when Shelia ran out. The car was about half-

way by the truck. When the witness saw Shelia "fixing to run" the witness called to her, "Go back." However, she kept running.

Shelia, who was eight at the time of trial, testified she, her three sisters and two aunts were around the truck. When she started from in front of the truck, she did not look to see if any cars were coming. She stated she ran into the door of the car. It knocked her beside the ditch. She got up and went into the yard. Her shoulder was hurt.

■ We are of the view, from analysis of the above testimony, that there was evidence of probative force to support the jury's answer to each issue on liability, and we cannot say such answers are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong or manifestly unjust.

■ Most of the testimony, it is true, came from the plaintiff and his testimony is in some respects contradictory. However, it is within the province of the jury to resolve conflicts and to pass upon the credibility of the witnesses and the weight to be given their testimony.

The closest question relates to the alleged failure of appellee to blow the horn. While he stated he did not blow the horn just as he passed the truck, other questioning developed that he just didn't remember. The over-all testimony was susceptible to the construction that he just could not remember whether he blew the horn as he approached. The aunt of Shelia, who was twelve years old at the time of the accident, did not state the horn was not sounded but just that she did not hear it sounded. The jury could have reasoned that the plaintiff had failed to show by a preponderance of the evidence that appellee failed to blow the horn. It is noted that whether this alleged failure to blow the horn was negligence and a proximate cause were submitted unconditionally. The jury could have reasoned that since appellee saw no

children around the truck it was not negligence. Too, it could have reasoned in any event that it was not a proximate cause, particularly in the light of the fact that no children were seen, and also Mary Washington's testimony that she called to Shelia to go back but Shelia did not heed her.

 With regard to the damage issues, it is to be said that the answers become immaterial in the light of supportable answers finding no liability. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334; Le Compte v. Sanders, 378 S.W.2d 861 (Tex.Civ.App.), ref., n.r.e.

There is no conflict in the jury's answer that the emergency in which it found appellee was acting was not the sole proximate cause of the collision and any other answer. No primary negligence that was a proximate cause had been found by the jury. See Williams v. Voight, 264 S.W.2d 454 (Tex.Civ.App.), ref., n.r.e.; Missouri Pacific Railroad Company v. Young, 403 S.W.2d 898 (Tex.Civ.App.), n.w.h.

Since there are no findings that would support a judgment for plaintiff asserted conflicts become immaterial. Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985; Nelson v. Dallas Railway & Terminal Co., 302 S.W.2d 436 (Tex.Civ.App.), ref., n.r.e.

Appellant asserts that the trial court erred in not hearing evidence on whether there was jury misconduct as set up in the motion for new trial and in refusing to hear evidence from a juror, who was present, as to jury misconduct so they could perfect their bill of exception.

There was no error in the court's actions. The motion is not supported by the affidavit of any juror and is supported only by a legally insufficient affidavit of plaintiff's counsel. Where such ground for new trial is not supported by an affidavit of a juror, or an affidavit reasonably excusing the failure to obtain a juror's affidavit, a refusal to hear testimony is a matter within the sound discretion of the trial court. Roy Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644.

The affidavit of the attorney or person not a member of the jury must be based on personal knowledge of affiant. J. Weingarten, Inc. v. Azios, 384 S.W.2d 160 (Tex.Civ.App.), ref., n.r.e. Obviously here counsel's affidavit was necessarily based on hearsay. The affidavit is also insufficient in that it states a mere conclusion as to diligence exercised to obtain affidavits of a juror. It does not show contact with all jurors, nor does it allege that a juror or jurors have related facts that would show jury misconduct but that the juror or jurors would not give an affidavit. See J. Weingarten, Inc. v. Azios, supra; Voland v. Conner, 258 S.W.2d 423 (Tex.Civ.App.), n.w.h.; Sutherland v. McGregor, 383 S.W.2d 248 (Tex.Civ.App.), ref., n.r.e.; Neuhoff Bros. Packers, Inc. v. Brooks, 410 S.W.2d 298 (Tex.Civ.App.), n.w.h.

All points have been considered by us and though not specifically discussed are overruled.

Affirmed.