**Senora GANT et al., Appellants,**

**v.**

**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY et al., Appellees.**

**No. 17705.**

Court of Civil Appeals of Texas, Dallas.

Nov. 19, 1971.

Craig M. Fowler, Tabor & Fowler, Irving, for appellants.

Robert E. Burns, Burford, Ryburn & Ford, Dallas, for appellees.

BATEMAN, Justice.

The appellant Senora Gant sued the appellees St. Louis-San Francisco Railway Company and Robert C. Yowell in her own behalf and as next friend for her minor son Paul Kevin Schultz, herein called Kevin, claiming damages for injuries sustained by him. Kevin was 8 years of age and his brother Edwin Keith Schultz was two years older when, pursuant to their plan to run away from their home, they were attempting to board a moving freight train of appellee Railway Company, on which appellee Yowell was the engineer. Kevin fell under the wheels of the train and both of his legs were amputated below the knees. The trial court rendered judgment upon a jury verdict favorable to appellees, that appellants take nothing.

The jury refused to find (1) that Yowell failed to keep such a lookout as a person using ordinary care would have kept; found (3) that the agents, servants and employees of the Railway Company failed to warn Kevin to keep away from the railroad cars, but (3A) refused to find that such failure was a proximate cause of the occurrence. They found (5) that the failure of the Railway Company to have a conductor on board the train on the occasion in question was negligence, but (6) failed to find that such negligence was a proximate cause of the occurrence. The jury refused to find (7) that Yowell failed to make such application of the brakes as a person using ordinary care would have made. They found (9) that before the occurrence in question Kevin was in a position of peril, but (10) failed to find that Yowell discovered that Kevin was in said position of

peril and realized that he probably would not extricate himself therefrom. The jury (14 and 15) acquitted Kevin of contributory negligence. The jury awarded Senora Gant her expenses of $2,336.74, and found that Kevin's medical, hospital and doctor bills in the future up to the age of 18 years, would amount to $8,600; but answered "None" to the issue as to his future psycho-therapy treatments, and answered "None" to Issues 18A, 18B and 18C inquiring as to what amounts would compensate Kevin for his pain and anguish in the past, future pain and anguish and loss of future earning capacity, but found that his medical expenses in the future after the age of 18 years would be $2,000.

Appellants' points of error Nos. 1, 2, 6, 7, 8, 9, 10 and 11 complain that the above adverse findings were so against the great weight and preponderance of the evidence as to be clearly wrong. These points of error require of us a consideration of the entire record. We find no substantial dispute in the testimony. The train was composed of three engines and nineteen freight cars. The two boys walked about two miles from their home in Irving, Texas to a point in North Irving where Highway 183 overpasses the Railway Company's tracks, which at that point extend generally in a north-south direction. When the boys arrived at the underpass those operating the train were in the process of switching cars. After watching this operation for several minutes, and after the train started south at slightly more than four miles per hour, the boys ran towards the moving train. Keith was carrying the knapsack and pillowcase holding their belongings, threw both on a flatcar and succeeded in getting on himself. However, Kevin tried to board the same car but slipped and fell back, landing on his feet, tried again and this time slipped and fell under the wheels.

The train had come into the Irving depot from Sherman. The conductor remained in the Irving depot doing his usual paper work during the switching operation. The two brakemen alighted from the engine when the train stopped for the switching activity, and both of them saw the boys standing on the edge of the service road under the overpass, but did not see them on the railroad right-of-way, and did not see anything to indicate that they intended to come on the right-of-way. The fireman remained on the engine and never saw the boys prior to the accident. The engineer, Yowell, sitting on the right side of the engine, did not see the boys before the train started south. He testified that when the train reached the speed of six to nine miles per hour he saw in his rearview mirror one of the boys, Kevin, run out from behind the concrete pillars at the underpass, throw a bag on a car and attempt to board the car, but that he failed to do so. The boy was ten or eleven freight car lengths back of the engine. Yowell immediately shut off his throttle and started blowing short emergency blasts from his horn to frighten the boy away, but the boy immediately again tried to board the train, and in doing so he fell under it. When he tried the second time, Yowell threw the brakes into emergency, stopped the train as soon as it was possible and sent crew members back to investigate and render aid if necessary.

■ We cannot say from a consideration of all of the testimony that any of the above findings were so against the weight and preponderance of the evidence as to be clearly wrong. Appellants argue that they proved by an expert witness that by application of the emergency brake the train could have been stopped in 22 feet after application of the emergency brakes, and that if emergency brakes had been applied when Yowell first saw Kevin trying to board the train the accident could have been avoided. The engineer, however, with very little time in which to make the decision, decided on another course, that of releasing the throttle and blowing intermittent short blasts of the horn in an effort to frighten Kevin away from the train. Perhaps if he had followed the course which

appellants' hindsight says was the proper course, then the accident might have been averted, but it was clearly the function of the jury to decide whether Yowell's actions in this respect were such as a person using ordinary care would have taken. The burden was on appellants to show by a preponderance of the evidence that Yowell failed to make such application of the brakes as a person using ordinary care would have made, but the jury found that appellants had failed to carry this burden. The record before us supports this finding.

The same is true as to the findings with respect to lookout on the part of Yowell, the failure to have a conductor on the train, and the failure to warn Kevin to keep away from the railroad cars. There was ample evidence to support all of these findings, and we have no right to substitute our appraisal of the effect of the evidence for that of the jury.

■ We now consider the discovered peril doctrine as it may apply to the facts of this case. The jury found that before the occurrence in question Kevin was in a position of peril, but refused to find that Yowell discovered that he was in said position of peril and realized that he probably would not extricate himself therefrom. The jury may very well have considered that Yowell did discover that Kevin was in a position of peril merely by being on the railroad right-of-way and attempting to board a moving train, which Kevin himself testified that he knew was a dangerous thing for him to try to do, but realization of what another person probably will do is something quite different. It is a mental process calling for the exercise of sound judgment in the light of existing circumstances. Yowell was shown to have had many years of experience as a fireman and engineer. When he saw Kevin try to board the train his judgment was that if he reduced the speed of the train and sounded the horn in several short blasts Kevin would probably be frightened into abandoning the venture and thus extricate himself. Knowing that Yowell did not have

the benefit of hindsight, the jury was justified in refusing to find, in effect, that Yowell realized that the warning blasts on the horn would not be effective in causing Kevin to extricate himself from his perilous position.

■ By their Points Nos. 9, 10 and 11 appellants complain of the answers of "None" to Special Issues Nos. 18A, 18B and 18C, as to Kevin's damages for pain, suffering and mental anguish in the past and in the future and as to his loss of future earning capacity, saying that these findings are so against the great weight and preponderance of the evidence as to be manifestly wrong. We cannot reverse on account of these negative responses because in the absence of some jury finding that appellees were negligent and that their negligence proximately caused Kevin's injuries, the answers to these issues on damages are wholly immaterial. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (1939); Washington v. Griffin, 427 S.W.2d 136, 140 (Tex.Civ. App., Houston 1st Dist. 1968, writ ref'd n. r. e.). No reversible error is shown by these points and we therefore overrule them.

■ By their third and fourth points of error appellants complain of the refusal of their requested special issues, Nos. 17–22, inquiring as to the failure of the engineer to stop the train "after Edwin Keith Schultz boarded it," and whether such failure was negligence and a proximate cause of the injuries. Appellants argue that this was a material inquiry, an affirmative answer to which would have changed the result of the trial. On the other hand, say the appellees, the evidence is undisputed that the engineer never saw the older boy, Edwin Keith Schultz, at any time. He and his employer, therefore, cannot be charged with negligence in failing to stop the train after this boy boarded it. We agree with this latter argument, which is supported by the evidence.

As appellees also point out, these requested issues concerning the stopping of

the train are only duplications or shades of a set of issues which were submitted to the jury. This set began with Special Issue No. 7 which inquired whether Yowell failed to make such application of the brakes as a person using ordinary care would have made. Rule 279, Vernon's Texas Rules of Civil Procedure, provides that in submitting a case upon special issues the trial court shall submit the *controlling issues* made by the pleadings and evidence, and further states that when this has been done "the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue." See Texas & Pacific Ry. Co. v. Snider, 159 Tex. 380, 321 S.W.2d 280, 283 (1959).

For the reasons stated, appellants' third and fourth points of error are overruled.

In their fifth point of error appellants complain of the refusal of the court to submit their requested Special Issues Nos. 9 and 12 and in failing to submit any issue on the question of whether or not the failure of appellees to warn Kevin to keep away from the railroad cars was negligence.

Appellants requested submission of two "clusters" of issues inquiring (1) whether appellees failed to warn Kevin of the danger involved in being in close proximity to the railroad cars, (2) whether such failure was negligence, and (3) whether such negligence was a proximate cause of the injuries. These requested issues were refused, but the court did submit Special Issues Nos. 3 and 3A as follows:

"SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that the agents, servants and employees of the Defendant railroad failed to warn Paul Kevin Schultz to keep away from the railroad cars? Answer 'We do' or 'We do not.'

ANSWER: We do.

If you have answered Special Issue No. 3 'We do,' and only in that event, then answer:

SPECIAL ISSUE NO. 3A

Do you find from a preponderance of the evidence that said failure was a proximate cause of the occurrence in question?

Answer 'We do' or 'We do not.'

ANSWER: We do not."

Special Issue No. 4, conditioned upon an answer of "We do" to Issue 3A, and being identical with Issue 3A, was not answered. There was no issue inquiring as to whether the failure mentioned in Issue No. 3 was negligence. Whether the absence of an issue making such inquiry was due to inadvertence in preparing the charge, as was suggested in oral argument and as may be indicated by the identical language used in Issues Nos. 3A and 4, or whether the trial court deliberately omitted it on the theory that the failure to warn was negligence as a matter of law, we do not know for the record is silent. In either event, there was no reversible error.

Appellants did not object to the charge in any respect. The question immediately presents itself: Was this manner of submission a *defect* in the charge, or was it the omission of, or failure to submit, an issue relied on by the complaining party? If the former, we would be compelled to hold that since there was no objection the point was not preserved for review but was waived. If the latter, request for submission was the proper method of preserving the right to complain. Lyles v. Texas Employers' Ins. Ass'n, 405 S.W.2d 725, 727 (Tex.Civ.App., Waco 1966, writ ref'd n. r. e.).

■ We have concluded that this was a defective submission, and that appellants waived the complaint by their failure to object to it. Rule 274, T.R.C.P. The ultimate issue was whether Kevin's injuries

were proximately caused by the railroad's failure to warn him of the danger of being close to, or attempting to board, the moving train. This failure to warn was an independent ground of recovery, but only if found to be negligence and a proximate cause. Negligence was therefore a component element of the ground of recovery. Proximate cause was another. But neither, standing alone, was an ultimate or controlling issue sufficient to establish a right or ground of recovery. See the following comment by the late Justice James P. Alexander following Rule 279, Vernon's Texas Rules of Civil Procedure, 1967 edition, Vol. 3, p. 8:

"If, however, the grounds of recovery or of defense consist of more than one element—that is, require more than one issue to submit them—and the court submits some of the elements but omits others, and there is no objection to the failure to submit same, the parties will be placed in the position of having agreed to waive a jury trial on the unsubmitted elements and to have submitted them to the court for his determination."

See also Skelly Oil Co. v. Medical & Surgical Clinic, 418 S.W.2d 574, 578 (Tex. Civ.App., Tyler 1967, no writ); Roberts v. Holmes, 412 S.W.2d 947, 949 (Tex.Civ. App., Eastland 1966, no writ); Rodriguez v. Higginbotham-Bailey-Logan Co., 172 S. W.2d 991 (Tex.Civ.App., San Antonio 1943, writ ref'd).

If "no objection is made to a defective submission of a controlling issue constituting a component element of a ground of recovery or a defense and a judgment is rendered thereon, such judgment will not be reversed because the failure to object is considered as a waiver of the defective submission of such issue." Allen v. American National Insurance Co., 380 S.W.2d 604, 609 (Tex.Sup.1964), citing Rule 274, T.R.C.P., and Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W. 2d 79, 85 (1940), wherein it is said:

"A defective submission of the essential elements of an issue not wholly void, *and not objected to*, will be regarded as a sufficient submission of such issue." (Italics ours.)

■ Appellants cannot be heard to argue that their request for a negligence issue made in connection with other requested issues concerning similar warnings by the railroad, sufficed as an objection to the charge required under Rule 274, T.R. C.P. Stuckey v. Union Mortgage & Investment Co., 383 S.W.2d 429, 437 (Tex. Civ.App., Tyler 1964, writ ref'd n. r. e.); City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176, 179 (1951), wherein it is said:

"Assuming that the requested charges were more accurate than those given, a request to give them not coupled with any objection to the form used by court will not be given effect as an objection to the issues as given."

See also Allen v. American National Insurance Co., 380 S.W.2d 604 (Tex.Sup. 1964); Boyer v. Gulf, Colorado & Santa Fe Ry. Co., 306 S.W.2d 215, 223 (Tex.Civ. App., Houston 1957, writ ref'd n. r. e.); Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 991 (1949).

■ If we be mistaken, and the error of the court in omitting the negligence issue was not waived by failure to object, we think the error was harmless in light of the jury's finding that the act itself; i. e., the failure to warn, was not a proximate cause of the injuries. If the negligence issue had been submitted and answered affirmatively, no ground of recovery would have been established because of the negative finding as to proximate cause. The issue of negligence merely establishes the *quality* of the act—it is not an act itself, and the proximate cause issue inquires whether the act complained of (failure to warn) caused the injuries and could reasonably have been foreseen to do so. Rule 434, T.R.C.P.

For the reasons given, the fifth point of error is overruled.

The case was fairly tried, and the verdict was adverse to appellants. They have not carried their burden of persuading us that this verdict should be set aside. The judgment is therefore affirmed.